YOUNKER et, Plaintiffs, v. NATIONWIDE MUTUAL
INSURANCE COMPANY et, Defendants.

Common Pleas Court, Sandusky County.

No. 31821.    Decided April 20, 1961.

258

GABEL, J.   Plaintiffs, Lyle P. Younker and Heber L. Howard, general insurance agents in the Woodville and Gibsonburg village areas of Sandusky County, incorporated their agency as "Securance Service, Inc." August 10, 1956.   The major portion of their business is done in a radius of fifty miles of the Gibsonburg or Woodville Area, although there was some evidence that they did some business out of State which is largely represented by renewals of parties who had formerly

lived in the Gibsonburg-Woodville area. Their gross sales during the past four years ranged somewhere between Two Hundred Thousand to Two Hundred Twenty Thousand Dollars. It is well to note that the word "Securance" is a dictionary word defined as "the act or fact of securing or assuring." This dictionary definition is almost exactly the same definition that Younker gives the word in his advertisement in the Gibsonburg High School Paper, "The Limelight" under date of May 2, 1957 in the following form:

"Security and Insurance='Securance' "

In February of 1960, defendant Nationwide Mutual Insurance Company and its affiliated companies, began an advertising campaign in various magazines having national circulation using the word "Securance" prominently displayed as a service mark and defining it as follows: (Exhibit No. 18)

"A new program for true family security, originated by Nationwide Insurance. A method of providing through one representative all (or part) of ones insurance—life, health, home, car, property; may include car and home financing. Also refers to the unique system of democratic participation through which Nationwide's member-customers help determine the direction and scope of company services."

After the first appearance of these ads, Securance Service, Inc. made application for and obtained registration of "Securance" as a trade name with the Secretary of State, Columbus, Ohio, to wit: March 10, 1960, and later on May 13, 1960, Securance Service, Inc. also obtained registration of "Securance" as a service mark.

Plaintiff complains that the defendants are using the mark "Securance" for exactly the same purpose the plaintiff owner has used it since 1955, prior to the incorporation of Securance Service, Inc. for the purpose of denoting a method of providing complete insurance coverage through one representative.

Plaintiffs seek the judgment of this Court decreeing to them the exclusive property right in the use of the word "Securance" and also seek an order of this Court permanently enjoining the defendants from using the word "Securance" as a trade name or service mark. Plaintiffs also seek an accounting for all profits of every kind and description that each defendant

has made by reason of the use of said service mark and also prays for damages by reason of the alleged wrongful acts of the defendants. The question of accounting and damages was passed at this hearing and is not a matter for the decision of the Court at this time.

This case involves the application of the law of trade names, trade marks and service marks. The law relating to these matters is set out in Sections 1329.01—1329.68, Revised Code. These statutes became effective as amended on October 1, 1957. Section 1329-67, Revised Code, provides as follows: "Nothing herein shall adversely affect the rights or the enforcement of rights in trade marks or service marks acquired in good faith at any time at common law." It has been previously noted in this opinion that Securance Service, Inc. did not register "Securance" as a trade name until March 10, 1960, and did not obtain a certificate of the filing of the service mark for the word "Securance" until May 13, 1960.

It might be well to distinguish trade marks, trade names and service marks. A trade mark is defined as a name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant in order to designate that which he manufactures or sells. A trade name is descriptive of the dealer himself; it involves the individuality of the dealer for protection in trade, for avoidance of confusion in business and for securing the advantage of a good reputation. A service mark refers primarily to the sale of advertising of services. Service marks are trade marks for services. Ownership of a service mark can only mature out of use of the mark by the person or individual claiming ownership. Section 1329.54, Para. 'F', Revised Code, defines service mark as follows: "Service mark means a mark used in the sale or advertising of services to identify the services of one person and distinguinsh them from the services of others and includes without limitation, the marks, names, symbols, titles, designation, slogans, character names and distinctive features of radio or other advertising used in commerce. Para. 'G' " A service mark shall be deemed "used" when it is used to identify the services of one person and distinguish them from the services of others and such services are sold or otherwise rendered in this State.

Section 1329.55, Revised Code, provides that a trade mark

or service mark shall not be registered if it Para. (E), "consists of a mark which, No. 1: When applied to the goods or services of the applicant, is merely descriptive or deceptively mis-descriptive of them, providing that nothing in Division 'E' of this Section shall prevent the registration of a mark *used* in this State by the applicant which has become distinctive of the applicant's goods or services. No. 3—The Secretary of State may accept as evidence that the mark has become distinctive, as applied to the applicant's goods or services, proof of substantially exclusive and *continuous* use thereof *as a mark* by the applicant in this State or elsewhere for the five years next preceding the date of filing of the application for registration; or (F) consists of or comprises a—service mark which so resembles a —service mark *registered* in this State or a —service mark—used in this State by another and not abandoned, as likely when applied to the goods or services of the applicant to cause confusion or mistake or to deceive."

Subject to these prohibitions, Section 1329.56, Revised Code, provides that any person who *adopts and uses* a trade mark or service mark, may file an application for registration setting forth certain minimum information. This Statute then provides "the application shall be accompanied by three specimens or facsimilies of such trade mark or service mark as *actually used* and shall contain a brief description of such trade mark or service mark as it appears on such specimens or facsimiles."

Was there continuous use of the mark "Securance" by the plaintiffs in this State for five years preceding the date of filing their application for registration? Was the application of plaintiffs for registration accompanied by three specimens or facsimiles of the service mark as *actually used?* Is the use of the mark "Securance" by Nationwide apt to cause confusion, mistake or deception?

A review of the testimony and the exhibits reveals that in the latter part of 1955, in anticipation of their incorporation, Younker and Howard began to circularize their customers with a magazine (Exhibit 3A-1, 3A-2, 3A-3) which on the front cover thereof, advertised the Schnoor Agency and Younker Agency and carried a picture of Lyle P. Younker and on the back cover, appeared in half inch print the inscription "Secur-

ance, Inc.," below thereof, "Protection is our Profession." Then to the left "Schnoor Insurance Agency, Woodville, Ohio" and to the right "Younker Agency, Gibsonburg, Ohio." This magazine is still used to circularize the customers of Younker and Howard and still bears the inscription on the back "Securance, Inc." Younker in his testimony admitted that the use of "Securance, Inc." was a mistake; that they originally applied for incorporation under that title, but were denied the use of the word "Securance" singly as a corporate name probably because the word was descriptive. Eventually they were incorporated as "Securance Service, Inc." An examination of these magazines represented as Exhibits 3A-1, 3A-2 and 3A-3, evidences the fact that their whole purport and intent is to adverise *Lyle P. Younker* and the *Schnoor Insurance Agency* and the *Younker Agency* more than placing heavy emphasis upon "Securance, Inc."

Plaintiffs' Exhibit No. 2, which is a litter bag containing various give-away items, all bear the inscription "Securance Service, Inc." Sometimes another inscription appeared below the corporate name,—"Protection is our Profession." All of plaintiffs' exhibits from No. 2 to 2D—1, 2, 3, 4, 5 and 6, including cards, calendars, envelopes, memoranda, receipts, photos, contracts, advertising signs, etc., bear the inscription "Securance Service, Inc." which is the full corporate name, many of which evidence no special attention placed upon the corporate name but more emphasis placed upon the Schnoor Agency and the Younker Agency or Lyle P. Younker individually. Plaintiffs claim they spent $9400.00 since their incorporation in promoting the use of the word "Securance." The only evidence presented to the Court at the time of trial with reference to the use of the word "Securance" as a mark, was Exhibit No. 17, which is a courtesy ad in the "Limelight" which is the Gibsonburg High School paper published May 2, 1957, at Page 5 which reads as follows:

"Security and Insurance=Securance
Securance Service
formerly
Younker Insurance"
"Protection is our Profession"

"Protection is our Profession" is the only slogan used by Younker or Securance Service, Inc. in their advertising. Lyle P. Younker testified that the cost of this ad was approximately $1.00. The only other instance in which the word "Securance" was promoted as a mark separate and apart from the corporate name, was the issuance of a calendar card for the year 1956 on the face of which appears the word "Securance" and below the inscription "Protection is our Profession." Mr. Younker testified that he probably issued two hundred and fifty, but not more than five hundred of these cards in the latter part of 1955 and the early part of 1956 at a cost of approximately $7.50 for two hundred and fifty, or $15.00 for five hundred. He was not sure of the exact number that had been issued. It might be noted that these cards were issued prior to the incorporation of Securance Service, Inc. This card is evidenced by Exhibit No. 40. It is interesting to note that for the years 1960 and 1961, calendar cards, Exhibits No. 41 and 42, similar to Exhibit No. 40, were issued by Lyle P. Younker in which his name appears in prominent print above Securance Service, Inc. in smaller print. There was also testimony that the secretaries of Securance Service, Inc. when answering the telephone, identified themselves by answering "Securance." However, such telephone identification would not be considered advertising and would not involve cost of advertising.

Therefore, with the few exceptions noted above, all of the advertising of Younker and Howard, as officers of Securance Service, Inc., emphasized either their own individual names or their corporate name, Securance Service, Inc. As evidence of this, the Court calls attention to Exhibit No. 21, which is a series of ads carried in the Gibsonburg Derrick beginning in February of 1955 on through to December of 1957 in several of which the name of Lyle Younker appears solely and exclusively without identification as having any association with Securance Service, Inc. In most of these ads, the corporate name is not used at all and in none of them is the mark "Securance" used singly or separately from the corporate name.

In order to establish their claim that the use of the mark "Securance" by Nationwide Insurance and its affiliated companies has created confusion in the minds of their customers,

the plaintiffs offered the testimony of William J. Dudley, Arthur E. Clark, Carter Clark and Dale Helle, as well as that of Mr. Andrews and Mr. Schaufelberger. Dudley, the two Clarks and Mr. Helle, among others, wrote letters to Younker (Exhibits 10, 11, 12, 13, 14 and 15) expressing some concern over the use of the word "Securance" as a mark by Nationwide in its national advertising. The Court was not too much impressed by this testimony for the reason that the Court felt that they wrote these letters primarily as friends and customers of Mr. Younker, at least at his suggestion, if not his solicitation.

Section 1329.56, Revised Code, provides that the application for the registration of the service mark shall be accompanied by three specimens or facsimiles of such mark as *actually used*. Plaintiffs submitted to the Secretary of State a facsimile with the single word "Securance" (Exhibit No. 9). According to the testimony of Mr. Younker, this word "Securance" was clipped out of the corporate name as it appeared on some of their letterheads (Page 119 of Record). It was not by any stretch of the imagination, a facsimile or a specimen of the mark as *actually* used for the reason that the word "Securance" as a mark had never been *actually* used by Securance Service, Inc., or by Younker and Howard, except in the two instances referred to previously in this opinion, to wit: the courtesy ad in the High School paper, the "Limelight," and in the calendar card issued in 1955. Furthermore, it is interesting to note that the word "Securance" alone has not been used in advertising or in any promotional scheme by Securance Service, Inc. or by Younker and Howard in any manner except in the two widely separated instances referred to above; and certainly these isolated instances of the use of the word "Securance" singly and alone as a mark, would not be proof of *substantial exclusive* and *continuous use* of such a mark by the applicant for at least five years preceding the date of the filing of the application for registration, as required by Section 1329.55, Revised Code, Subdivision Three.

Plaintiffs cite the case of *Empire State Aluminum Corporation* v. *Empire Aluminum Company,* 78 Ohio Law Abs., 174, supporting their contention that part of a corporate name,

if used by a competitor either alone or in combination with other words, will be protected by injunction. First of all, this is a case of a corporate name vs. a corporate name and is based on theory of unfair competition. The nature and character of Nationwide's advertising with the use of the word "Securance" as a service mark in the opinion of the Court, cannot mislead the public into the belief that the services to be rendered by the defendant Nationwide, are the services rendered by the plaintiff Securance Service, Inc. Each of them are engaged in a different type of business. Nationwide is an insurer, whereas Securance Service, Inc. is an insurance agency, selling a general line of insurance and identified as such. In *Empire State Aluminum Corporation case,* each of the parties was selling aluminum. Empire State, over a long period of years had established a nationwide business and spent considerable sums of money promoting their corporate name and by reason of their advertisements and their promotions, words "Empire State" and the word "Empire" were well and favorably known throughout the aluminum trade.

Plaintiffs also cite the case of *Hugo Stein Cloak Company* v. *The S. B. Stein & Son, Inc.,* 58 Ohio App., 377—this too is a case of corporate name vs. corporate name. The facts reported in this case indicate that the Stein Cloak Company had moved into a new five story building four doors away from the defendant, who was then doing business as a jeweler under the name of S. B. Stein Jeweler, or S. B. Stein & Son. A few months after plaintiff had moved into the new building and had prominently displayed the word "Stein's" on its store front, windows and awnings, the defendant formed a corporation under the name and style of the S. B. Stein & Son, Inc., and thereafter began to use the single word "Steins" on his signs and in his advertising which he had never done before in his thirty years of business at that particular location. He also put a sign across his store front, bearing that one word in much the same style lettering and general appearance as the sign of the plaintiff and a sign with the same word over his large street clock. Plaintiff in this case since its incorporation in 1906 and up till the time of the decision of this case in 1937, used the word "Steins" as a trade mark and a trade name and

had used it by means of signs, labels, posters, shopping bags, parcel wrappers, newspaper advertising and in all its solicitations and dealings with local customers and trade and had spent more than a million dollars in advertising that name in a particular form, to wit, the word "Steins"; whereas the defendant had never used the word "Steins" prior to 1936 and prior to his incorporation under the style and name of "Stein & Son, Inc." In this case the word "Steins" was not only used separately and apart from the corporate name, but was even registered as a special and single name. Here there was a clear intent on the part of the defendant to use a device and artifice or a simulation or a practice which would tend to mislead the public, which is a clear attempt to appropriate or "cash in" or "chisel" on the goodwill of the Stein Cloak Company and here again the Court has no doubt that if Nationwide were attempting to incorporate "Securance" as a part of its corporate name or use it singly or separately without identifying "Nationwide" as the user, it would be an infringement of the corporate name of the plaintiff, Securance Service, Inc., but this is not in accord with the facts in this case.

*Standard Oil Company* v. *Miche*, 34 Fed. Rep. Sec. Series, 802, is another instance where the defendant sought to chisel and profit by incorporation in his trade name the name of another. The defendant in this case constructed a filling station and painted thereon two signs. These signs each bore the words "Standard Service Station." The background and letters of these signs were re-painted some two years prior to the suit similar in color scheme to that of the station of the plaintiff. The gasoline pumps were also painted similarly to those of the plaintiff. Across the street therefrom, the plaintiff also had a station with the usual coloring and markings of a Standard Oil Station. There is no doubt that the defendant intended to copy and trade off the name and goodwill of the nationally known plaintiff. Except for the two instances referred to previously, there is no evidence that the plaintiff in this case has spent any money of any consequence at all in advertising the word "Securance" as a mark or for that matter, in advertising Securance Service, Inc. Most of the advertising

of the plaintiffs is devoted to promotion of Younker as an insurance agent.

The Court has read but will not review in this opinion, the other cases cited by the plaintiff and by the defendants. The cases are innumerable. Necessarily none of them contain the same set of facts that we find in this record. However, all of them have this one thing in common and that is, that the Court in no instance will grant an injunction unless there is clear and convincing evidence that the alleged infringement of a trade-mark, trade name or service mark causes confusion, mistake, or is intended to deceive.

Injunction is an extraordinary remedy and is not to be granted unless the proof is clear and convincing. The Court must exercise great caution and there must be a clear incontestable and well defined right in the plaintiff. The injury to the plaintiff must be real, certain, substantial, serious and direct. From the state of the record made in this case, the Court cannot conclude that because the word ''Securance'' appears in the corporate name of the plaintiff, that he has an incontestable right and monoply to the use of that word to the exclusion of all others. After all it is a dictionary word defined as ''the act or fact of securing or assuring.'' (Exhibits No. 38-39.)

Plaintiffs' registration of the word ''Securance'' as a service mark and a trade name with the Ohio Secretary of State was rather an afterthought, encouraged by the national advertising of the defendant in which they used the word as a service mark. As a matter of fact, this registration occurred on March 10th and May 13th after the national circulation of Look Magazine on February 16, 1960. The Court gets the impression from the evidence that the plaintiff saw an opportunity to capitalize upon the use of the word by the defendants, rather than vice versa. As stated previously, plaintiffs' advertising was directed primarily at the promotion of Lyle Younker as an individual rather than the word ''Securance'' as a service mark or the corporate name ''Securance Service, Inc.''

In the state of this record, the Court does not feel that the plaintiff has sustained the burden of proof. It is, therefore,

the judgment of this Court that the plaintiffs' prayer for an injunction be denied and his petition be dismissed.

And it is the further order of the Court that the prayer of the cross-petition be granted and that the registration of the service mark "Securance" by plaintiffs is declared and decreed to be invalid and that it was granted improperly and that the Secretary of State is hereby ordered to cancel the same from his official records as provided in Section 1329.62, Revised Code.

Entry in accordance with this opinion will be drawn by counsel for the defendant and cross-petitioner. Exceptions noted for the plaintiff.