SEMINATORE, Appellant,

v.

MEDICAL MUTUAL OF OHIO, Appellee.

[Cite as *Seminatore v. Med. Mut. of Ohio* (2000), 136 Ohio App.3d 758.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75496.

Decided Feb. 28, 2000.

*Bieser, Greer & Landis, L.L.P., David C. Greer, Howard P. Krisher* and *Nikki J. Palmer,* for appellant.

*Squire, Sanders & Dempsey, Harold E. Farling, Michael R. Reed* and *David J. Young,* for appellee.

---

MICHAEL J. CORRIGAN, Judge.

The plaintiff-appellant, Kenneth Seminatore, appeals from the grant of summary judgment by the trial court in favor of defendant-appellee, Medical Mutual of Ohio, f.k.a. Blue Cross and Blue Shield of Ohio. Appellant also appeals from the denial of his motion for summary judgment by the trial court.

The relevant facts of this case are generally not in dispute. The appellant was an attorney who was retained by the appellee to perform various legal services over a period of time in furtherance of the interests of the appellee corporation. In a letter dated September 13, 1988, from John Burry, Jr., who was the President and Chief Executive Officer of the appellee corporation, certain proposals were made to the appellant that would govern the parties' relationship in the event that one of the parties decided to terminate the attorney-client relationship "as to new or future matters." [1] The letter stating the terms of the proposed agreement sent by Burry to appellant was signed and accepted by appellant on November 8, 1988. The agreement provides:

"Therefore, Blue Cross hereby agrees to pay you a minimum retainer of $75,000 per month for 12 months, plus ordinary and necessary expenses incurred on Blue Cross' behalf. You may direct that payment to your current firm, or otherwise, as you see fit. In the event of your death, provided we have approved a suitable substitute, such payments shall continue.

"The foregoing minimum retainer shall commence to be paid in that month in which Blue Cross or you deems the attorney-client relationship terminated as to new or future matters. Thus Blue Cross and you will both be assured of continuity in your completion of existing matters. Either Blue Cross or you may cause the commencement of such monthly payments by written notice to or from General Counsel, in either case deeming such termination to have occurred.

"In the event that during any one of the 12 months, you do not engage in representation for us, the monthly retainer shall nonetheless be paid, but shall be a credit towards any future month in which you do perform legal services. For

---

1. Appellant refers to this letter, alternately, as a contract and/or as a "retirement/severance agreement."

any such month, please submit any charges in excess of the $75,000 per month at your then regularly charged hourly rates."

In March 1997, as a condition of the appellee's settlement of a very high profile lawsuit brought against it by the Ohio Department of Insurance and the Ohio Attorney General, the appellee terminated its attorney-client relationship with the appellant. According to the terms of the settlement agreement in that litigation, the appellant was prohibited from providing any current or future legal representation to the appellee. At the time of the termination of the attorney-client relationship, the appellant was not owed any monies by the appellee for any legal work that had been performed prior to that date on behalf of appellee.

On March 27, 1997, appellant made a demand upon appellee for the commencement of payments of $75,000 per month for twelve months in accordance with the terms of the agreement. Appellee refused this demand.

On November 26, 1997, appellant filed this lawsuit, alleging breach of contract, in the Montgomery County Court of Common Pleas. Venue was found to be lacking in Montgomery County. Therefore, the case was transferred to the Cuyahoga County Court of Common Pleas on April 6, 1998. On April 28, 1998, the appellee filed an answer and counterclaim.

The parties filed cross motions for summary judgment in the trial court, each alleging that the agreement was unambiguous and that they were entitled to judgment as a matter of law. Additionally, the appellee alleged that Burry did not possess the authority to bind the appellee to the agreement without the board of trustees' approval or ratification. In a six-page opinion, which was journalized on November 14, 1998, the trial court entered summary judgment in favor of the appellee and denied appellant's motion for summary judgment. The trial court concluded, after construing all disputed facts most strongly in favor of the plaintiff/appellant, that:

"[T]he agreement (even if binding and enforceable on the corporation) does not call upon the defendant to pay sums to plaintiff where, as here, no services were rendered. Therefore, defendant is entitled to judgment as a matter of law. All of the factual issues as to Burry's authority to bind and Board approval are immaterial to the analysis given the threshold interpretation of the instrument addressed by the Court."

The appellant timely filed the within appeal from the rulings of the trial court. The appellant presents a total of three assignments of error. The first two assignments of error, having a common basis in law and fact, will be addressed concurrently by this court.

"I.  The trial court erred in interpreting the contract as a matter of law and sustaining Medical Mutual's cross–motion for summary judgment when the meaning of the September 13, 1998 agreement is disputed.

"II.  The trial court erred in overruling Mr. Seminatore's motion for summary judgment when the contract is enforceable and the clear, unambiguous terms of the contract provide for payment to Mr. Seminatore."

Civ.R. 56 provides that summary judgment may be granted only after the trial court determines that 1) no genuine issues as to any material fact remain to be litigated, 2) the moving party is entitled to judgment as a matter of law, and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802.  Doubts must be resolved in favor of the nonmoving party.  *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.  Under *Dresher,* " * * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on material element of the nonmoving party's claim." *Id.* at 296, 662 N.E.2d at 276.  The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings.  *Id.* at 293, 662 N.E.2d at 273–274. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists.  *Id.*

This court reviews the lower court's granting of summary judgment *de novo.  Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153.  An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C).  "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *.  [T]he motion must be overruled if reasonable minds could find for the party opposing the

motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

The alternate theories advanced by the appellant in these two assignments of error are 1) because the agreement was in fact ambiguous, the trial court erred in granting appellee's motion for summary judgment, and, 2) the agreement was not ambiguous, therefore the trial court erred in not granting appellant's motion for summary judgment.

■ Our review of the agreement leads this court to the identical conclusion as the one reached by trial court. The plain language of the agreement clearly provides that the appellant was only to be paid the twelve $75,000 monthly payments for "completion of existing matters." Given the unique set of circumstances under which the parties' attorney-client privilege was terminated, the appellant was neither required nor permitted to continue work on existing matters. The appellant concedes that appellee has not "failed to pay for legal fees incurred during [appellant's] representation of the Company." Thus, the trial court properly granted appellee's motion for summary judgment as there remained no genuine issues of fact.

■ It is a fundamental principle of contract construction that contracts are to be interpreted to carry out the intent of the parties, as that intent is evidenced by the contractual language. *Pharmacia Hepar, Inc. v. Franklin* (1996), 111 Ohio App.3d 468, 475, 676 N.E.2d 587, 592, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 922–923. The interpretation of a contract is a matter of law if the language is clear and unambiguous. *Nationwide Mut. Fire Ins. Co. v. Guman Brothers Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 685–686. The intent of parties to a written agreement can be found in the language that they choose to employ. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 525–526. A court must give effect to the contract's express terms in determining the rights and obligations of the parties and cannot, in effect, create a new contract by finding an intent not expressed in the clear language used by the parties. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501–502.

In the case *sub judice*, the agreement between the parties provided that in the event of the appellant's death, the payments would continue provided the appellee "approved a suitable substitute." If, as the appellant argues, the monies to be paid to him under the contract were in consideration for legal services already rendered, there would be no need for the parties to insert a provision in the agreement giving the appellee the right to approve new legal counsel in the event of the appellant's death. If the agreement was truly a retirement plan, the

$900,000 in total payments purportedly owed the appellant would have been owed the appellant at the time of the termination of the attorney-client relationship, regardless of whether he continued to work on existing matters. The parties could have very easily worded their agreement to make it clear that the appellant's entitlement to the twelve monthly payments was not contingent upon his continued representation of the appellee. The fact that they chose not to do so is indicative of their intent to make the payments dependant on appellant's continuous service. See *Long Beach Assoc., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 697 N.E.2d 208.

Even more compelling language in the agreement that obligates us to conclude that the parties did not intend that appellant receive the payments if he did not do any additional work is as follows, "[the] foregoing minimum retainer shall commence to be paid in that month in which Blue Cross or you deems the attorney-client relationship terminated *as to new or future matters.* Thus, Blue Cross and you will both *be assured of continuity in your completion of existing matters.*" (Emphasis added.) If the payments were to commence upon the termination of the attorney-client relationship regardless of the future relationship between the parties, there would have been no need to modify the word "terminated" with the phrase "new or future matters." The clear implication of the wording is that the relationship would not be terminated immediately as to old or existing matters. Similarly, the sentence stating that each party would be assured of "continuity" in the "completion of existing matters" can only be interpreted to mean that it was understood that the appellant was to be paid for additional work to be done on matters that had already commenced prior to the termination of the attorney-client relationship.

Therefore, we hold that the trial court properly found that the agreement did not require the appellee to pay the appellant where no services were rendered. These two assignments of error are not well-taken.

The appellant's third assignment of error states:

"III. The trial court erred in comparing the payments to a non–refundable retainer agreement."

Given our disposition of the appellant's first two assignments of error, this assignment of error is rendered moot pursuant to App.R. 12(A)(1)(c).

*Judgment affirmed.*

DYKE, A.J., and ROCCO, J., concur.