BOB KRIHWAN PONTIAC–GMC TRUCK, INC., Appellant,

v.

GENERAL MOTORS CORPORATION, Appellee.

[Cite as *Bob Krihwan Pontiac–GMC Truck, Inc. v. Gen. Motors Corp.* (2001), 141 Ohio App.3d 777.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–262.

Decided Jan. 30, 2001.

778

*Phillips Law Firm, Inc.* and *Robert S. Kaiser; Paxton & Associates* and *Robert C. Paxton, II,* for appellant.

*Jones, Day, Reavis & Pogue, Jeffrey J. Jones* and *Douglas M. Mansfield;* and *Paul Zavala,* for appellee.

PETREE, Judge.

This matter comes before the court on appeal from the denial of a motion to stay enforcement of a January 3, 2000 order of the Ohio Motor Vehicle Dealers Board ("board"). That order found that appellee, General Motors Corporation

("GM"), has good cause to terminate the "Dealer Sales and Service Agreement" between GM and appellant, Bob Krihwan Pontiac–GMC Truck, Inc.

Bob Krihwan is the president and majority shareholder of appellant, Bob Krihwan Pontiac–GMC Truck, Inc. He is also one of two "Dealer Operators" pursuant to a "Dealer Sales and Service Agreement" entered into by Krihwan, his partner Douglas Wick, and appellee, General Motors Corporation.[1]

In November 1996, Krihwan pled guilty to felony income tax evasion. Krihwan's conviction was the result of his use of a secret account into which Krihwan surreptitiously deposited checks written to appellant. Krihwan would then convert the funds of this account to his own use without reporting the use of those funds to his partner, the dealership or its accountants, or to the federal government as personal income.

In late December 1996, Krihwan's felony conviction came to the attention of Doug Stevens, one of GM's regional managers. After obtaining and reviewing a copy of Krihwan's criminal record, Stevens recommended that a notice of termination be sent to Krihwan pursuant to Section 14.5 of the parties' Dealer Sales and Service Agreement. That section provides:

"14.5   Acts or Events

"If [GMC] learns that any of the following has occurred, it may terminate this Agreement by giving Dealer written notice of termination. Termination will be effective on the date specified in the notice.

"14.5.1

"Conviction in a court of original jurisdiction of Dealer, or a predecessor of Dealer owned or controlled by the same person, or any Dealer Operator or dealer owner of any felony."

The notice of termination was approved by GM and was sent to Krihwan on January 31, 1997. Upon receipt, appellant filed a protest with the board, contesting termination on the grounds that GM did not have "good cause" to terminate the agreement and its business relationship with appellant. On August 3, 1999, a board examiner held a hearing on the protest, at which time both parties presented evidence in support of their position.

On December 1, 1999, the examiner issued a comprehensive report and recommendation in which he concluded that Krihwan had engaged in fraudulent and unlawful activity involving the dealership over at least a three-year period. That report and recommendation was adopted by the board on January 3, 2000, without modification. Accordingly, the board's final order approved GM's effort

---

1. Douglas Wick is not a party to this litigation.

to terminate its relationship with appellant, and Bob Krihwan as appellant's Dealer Operator.

Following receipt of the board's order, appellant filed an administrative appeal with the Franklin County Court of Common Pleas. Accompanying its notice of appeal, appellant also filed a motion to stay enforcement of the board's order pending judicial review. That motion was overruled on January 19, 2000. This appeal followed, and raises two issues for our consideration: (1) does the trial court's January 19, 2000 order constitute a final appealable order; and (2) if so, did the trial court abuse its discretion when it concluded that a stay was not warranted.

■ Section 3(B)(2), Article IV of the Ohio Constitution provides that courts of appeals in this state have jurisdiction as provided by law to review, reverse, affirm, or modify final judgments and orders of lower courts. Germane to this appeal, R.C. 2505.02(B)(4) states:

"An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

"* * *

"(4) An order that grants or denies a provisional remedy and to which both of the following apply:

"(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

"(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."

In this case, appellee contests a finding of appealability, arguing that the provisions of R.C. 2505.02(B)(4)(b) and Civ.R. 54(B) have not been satisfied. We find in favor of appellant on both claims.

■ Despite appellee's urging that we do so, we do not construe R.C. 2505.02(B)(4)(b) to require the absence of every theoretical remedy in order to find that appellant would be denied a "meaningful" or "effective" remedy following final judgment. This is particularly so when, in a situation such as this, the court will be unable to fashion a remedy which would replace a potential loss of business goodwill, or repair business relationships with third parties such as creditors and suppliers.

■ Moving to appellee's second claim, we find Civ.R. 54(B) inapplicable. Civ.R. 54(B) applies in instances where there are multiple claims or multiple

parties, and where a ruling or judgment only partially determines the claims raised, or determines the rights of less than all of the parties. The trial court's denial of appellant's motion for a stay clearly does not present this situation.

In sum, therefore, appellant's appeal is properly before this court. Having so determined, we turn to the second issue presented; whether the trial court erred when it concluded that a stay was not warranted.

The filing of an administrative appeal does not automatically entitle a party to a stay of execution pending judicial review. Rather, the General Assembly has given trial courts broad discretion when making such determinations, legislating that: "[i]f it appears to the court than an *unusual hardship* to the appellant will result from the execution of the agency's order pending determination of the appeal, the court *may* grant a suspension and fix its terms." R.C. 119.12. As such, when reviewing whether a trial court properly granted or denied a motion to stay an administrative order, the standard of review employed is an abuse of discretion. *Carter Steel & Fabricating Co. v. Danis Bldg. Construction Co.* (1998), 126 Ohio App.3d 251, 254, 710 N.E.2d 299, 300–301.

An abuse of discretion is not simply an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142. See, also, *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149. Rather, that concept demonstrates a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 751. Stated alternatively, a trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *Blakemore, supra.* According to the Ohio Supreme Court:

" ' "[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias." ' " *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1252, quoting *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 361, 473 N.E.2d 264, 313.

When asked to stay an administrative order, courts give significant weight to the expertise of the administrative agency, as well as to the public interest served by the proper operation of the regulatory scheme. See *Hamlin Testing Labs., Inc. v. United States Atomic Energy Comm.* (C.A. 6, 1964), 337 F.2d 221.

To that end, R.C. 119.12 allows the court to "grant a suspension" of an agency order pending appeal if the court determines that "unusual hardship" will result to appellant.

Although R.C. 119.12 does not set forth or proscribe the factors the court may consider in determining whether to suspend operation of an administrative order, those factors have been refined by the courts. The Sixth Circuit, in addition to many other courts, has repeatedly relied upon the following factors as logical considerations when determining whether it is appropriate to stay an administrative order pending judicial review. Those factors are: (1) whether appellant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether appellant has shown that it will suffer irreparable injury; (3) whether the issuance of a stay will cause harm to others; and (4) whether the public interest would be served by granting a stay. See *Hamlin, supra; Gurtzweiler v. United States* (N.D.Ohio, 1985), 601 F.Supp. 883; *Holden v. Heckler* (N.D.Ohio, 1984), 584 F.Supp. 463; *Upjohn Company v. Finch* (W.D.Mich., 1969), 303 F.Supp. 241; *Friendship Materials v. Michigan Brick, Inc.* (C.A. 6, 1982), 679 F.2d 100; and *Virginia Petroleum Jobbers Assn. v. FPC* (D.C.Cir., 1958), 259 F.2d 921.

Weighing these factors, the trial court considered the following prior to reaching its decision. First, the court recognized the proper deference to be accorded to the board, as well as to the legislative scheme set forth in R.C. Chapter 4517. The trial court noted that public policy and the law of this state prohibit convicted felons from obtaining automobile dealer licenses and, further, that the General Assembly recognized that virtually all license suspension or terminations involve some degree of "hardship," but only those involving "unusual hardship" are candidates for a stay.

Turning to the facts presented, the court explained that appellant's dealer agreement clearly and unambiguously contains a felony termination clause, that the felony termination clause is a material provision of the agreement and, further, that the testimony presented establishes that GM uniformly terminates dealer agreements with its Dealer Operators following felony convictions.

Applying a recent decision of this court, the trial court went on to conclude that a felony conviction alone could constitute "good cause" for the termination of a dealer agreement under R.C. 4517.55. See *General Motors Corp. v. Monte Zinn Chevrolet Co.* (2000), 136 Ohio App.3d 157, 736 N.E.2d 62; discretionary appeal not allowed (2000), 88 Ohio St.3d 1515, 728 N.E.2d 403. In light of our decision in *Zinn,* public policy and statutory law, appellant's felony conviction, and the felony termination clause, the court reasoned that appellant's chance of prevailing on the merits was slim.

Finally, the court determined that the grant of a stay would harm appellee as it would force GM to continue a personal services relationship under a contract that clearly permits appellee to terminate such a relationship in the event that a Dealer Operator is convicted of a felony. In light of these findings, the court concluded that a stay was not warranted.

Based upon a full consideration of the trial court's decision and analysis, the record, and the briefs and arguments of counsel, we believe that the trial court acted within the law and the bounds of its discretion when it denied appellant's motion for a stay. Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KENNEDY and McCORMAC, JJ., concur.

JOHN W. McCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.