MEADE, Appellee,

v.

BEVERLY ENTERPRISES–OHIO, INC., d.b.a. Western
Reserve Extended Care, et al., Appellants.

[Cite as *Meade v. Beverly Ent.–Ohio, Inc.*, 154 Ohio App.3d 521, 2003-Ohio-5231.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2003–L–007.

Decided Sept. 26, 2003.

Beverly M. Briggs, for appellee.

Daniel A. Richards, Shawn W. Maestle and Scott C. Smith, for appellants.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellants, Beverly Enterprises–Ohio, Inc., d.b.a. Western Reserve Extended Care, Beverly Assisted Living, Inc., and Natalie Molaskey (collectively "Western Reserve"), appeal from the judgment of the Lake County Common Pleas Court that granted a preliminary injunction[1] against appellants and in favor of appellee, Virgie Meade. Neither party appeared for oral arguments. Therefore, the case was submitted on the briefs. We affirm.

{¶ 2} Meade first became a resident at Western Reserve in March 1998. At that time, Western Reserve officials told her that she would be allowed to use tobacco products inside their facility at a designated location. This was an important factor in Meade's decision to live at Western Reserve, as she was a life-

---

1. Although the trial court captioned its entry as a "Temporary Restraining Order," we have previously determined that the order was, in fact, a preliminary injunction, and, thus, a final appealable order. See March 19, 2003 judgment entry.

long smoker. Effective July 1, 1998, the nursing home became a "smoke-free" facility.

{¶ 3} The no-smoking policy provided as follows:

{¶ 4} "[E]ffective July 1, 1998, Western Reserve Healthcare became a smoke-free facility. Smoking shall not take place inside any Western Reserve Health-care building at any time by associates, residents, and/or guests. **Exception:** Residents who smoke and resided at Western Reserve on July 1, 1998 may continue to do so in designated areas. Guests may not smoke inside the facility. Any new admission who smokes will be assessed by nursing for appropriateness and safety and, pending the results of the assessment, may be permitted to smoke, but only outside with supervision. Smokers may smoke outside in the patio areas. Smoking around the main building entrances is not permitted." (Emphasis sic.)

{¶ 5} Meade continued to smoke in the facility until December 2002 under this policy. At that time, the new administrator of the nursing home informed Meade that she could smoke only outside the facility because the exception under the policy no longer applied to her.

{¶ 6} Meade initiated the instant action seeking compensatory damages and injunctive relief against appellants. On December 27, 2002, the trial court held a hearing regarding Meade's request for a temporary restraining order. Appellants were given notice of the hearing and participated fully in it. The trial court also viewed the nursing home.

{¶ 7} Four days after the hearing, the trial court issued its judgment in which it granted the temporary restraining order. Specifically, the judgment stated that when the temperature outside the facility is less than 35 degrees, appellants are required to assist Meade in smoking four cigarettes per day inside the facility. The judgment further provided that Meade's inside smoking must be performed in a manner that limits the possible detrimental effect of the smoking on other residents and employees of the facility. To this end, Meade may only smoke in the designated room, with the window open, and she must exhale her smoke towards the open window. The order also precludes Meade from taking her portable oxygen tank into the room. The order also required that the Fire Marshal review the room and procedures.

{¶ 8} The trial court found that Meade was addicted to nicotine and still needed to smoke cigarettes to alleviate her withdrawal pains. The court concluded that Meade would suffer irreparable harm, i.e., pain and mental anguish, if the restraining order were not granted. In addition, the trial court held that even though Meade's residency at the nursing home had been interrupted by hospital

stays, the exception to the facility's "no-smoking" policy still applied to her and she had a right under R.C. 3721.13(A) to smoke inside the facility.

{¶ 9} Appellants raise one assignment of error:

{¶ 10} "The Trial Court Erred in Granting Appellee Injunctive Relief Because She Failed to Present Clear and Convincing Evidence to Establish Entitlement to Injunctive Relief."

{¶ 11} We review a trial court's decision to grant injunctive relief only for an abuse of discretion. *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 125, 59 O.O. 151, 133 N.E.2d 595 ("unless there is a plain abuse of discretion on the part of trial courts, in granting or refusing injunctions, reviewing courts will not disturb such judgments").

{¶ 12} The trial court may consider the following factors when determining whether injunctive relief should be granted:

{¶ 13} "(1) [T]he likelihood of the plaintiff's success on the merits, (2) whether there exists an adequate remedy at law, (3) whether the injunction would prevent irreparable harm, (4) a balancing of the potential injury to the defendant and the general public, and (5) whether the injunctive relief sought is for the purpose of maintaining the status quo pending a trial on the merits." *Rein Constr. Co. v. Trumbull Cty. Bd. of Commrs.* (2000), 138 Ohio App.3d 622, 630–631, 741 N.E.2d 979. See, also, *Hardrives Paving & Constr., Inc. v. Mecca Twp. Bd. of Trustees* (Sept. 30, 1999), 11th Dist. No. 98–T–0192, 1999 WL 959864, at * 2.

{¶ 14} In an action for a temporary or permanent injunction, the plaintiff must prove his case by clear and convincing evidence. *Franklin Cty. Dist. Bd. of Health v. Paxson*, 152 Ohio App.3d 193, 2003-Ohio-1331, 787 N.E.2d 59, ¶ 25. See, also, *Younker v. Nationwide Mut. Ins. Co.* (1961), 18 O.O.2d 381, 176 N.E.2d 465, reversed on other grounds (1963), 175 Ohio St. 1, 23 O.O.2d 285, 191 N.E.2d 145.

{¶ 15} Appellants argue that Meade failed to demonstrate that she would suffer irreparable harm or injury if the trial court denied the injunction, failed to establish that no third parties would be unjustifiably harmed by the injunction, and failed to demonstrate that granting the injunction would serve the public interest. We disagree.

{¶ 16} Meade presented evidence that smoking was one of the few pleasures she still enjoys in life. She testified that she was addicted to smoking and that she had been for most of her life. She testified that she suffers physical pain when she is unable to smoke. She also testified that she had attempted to use nicotine patches without success. Meade testified that due to her pulmonary conditions, she suffered pain if she was exposed to cold weather. She also

testified that she was more susceptible to contracting pneumonia. Appellants presented no evidence contra. Given Meade's physical condition and lack of quality of life, we cannot say that the trial court abused its discretion in finding that Meade would suffer irreparable harm or injury if she were forced to smoke outside in cold weather.

{¶ 17} Appellants also argue that Meade failed to establish that her smoking indoors would not harm the other 170 residents of the facility. First, we note that Meade was not required to prove that her smoking would not cause harm to third parties. The trial court had to balance the "potential injury to the defendant and the general public." *Rein Constr. Co.*, 138 Ohio App.3d at 630, 741 N.E.2d 979. In the instant case, the trial court issued a detailed order designed to minimize, if not eliminate, the risk of harm to other residents of the facility. Meade was required to smoke in a designated room with the window open and exhale the smoke out the window; she was not permitted to take her portable oxygen into the room; her cigarettes and lighter were to be locked away when not in use; she was permitted to smoke only inside when the temperature on the patio fell below 35 degrees; and she was to be supervised while smoking. These steps certainly balance Meade's interests and the health and safety of the other residents and employees of the facility.

{¶ 18} Appellants also argue that Meade was required to prove that the public interest would be served by granting the injunction. While the trial court may consider the public interest in granting the injunction, it is not required to do so. See *Rein Constr. Co.*, 138 Ohio App.3d at 630, 741 N.E.2d 979. Obviously, if the trial court is not required to consider the public interest, Meade cannot be required to prove that the injunction serves a public interest.

{¶ 19} After a review of the record, we cannot say that the trial court abused its discretion in issuing the injunction. Appellants' assignment of error is without merit, and the judgment of the Lake County Common Pleas Court is affirmed.

Judgment affirmed.

JUDITH A. CHRISTLEY and WILLIAM M. O'NEILL, JJ., concur.