**LCP HOLDING COMPANY, Appellant,**

v.

**TAYLOR, Appellee.**

[Cite as *LCP Holding Co. v. Taylor*, 158 Ohio App.3d 546, 2004-Ohio-5324.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2003–P–0067.

Decided Sept. 30, 2004.

548

Todd F. Palmer and Daniel P. Petrov, for appellant.

Christopher J. Carney, for appellee.

_____

JUDITH A. CHRISTLEY, Judge.

{¶ 1} Appellant, LCP Holding Company, appeals from a judgment of the Portage County Court of Common Pleas that denied its request for a preliminary injunction against appellee, David M. Taylor. For the reasons that follow, we affirm.

{¶ 2} Appellant is a corporation that engages in the manufacture and sale of commercial truck equipment. Appellee was formerly employed by appellant and worked in various managerial sales positions.

{¶ 3} Appellee began his employment with Great Lakes Truck Equipment in 1977. At that time, he was employed as a driver of commercial trucks. Soon thereafter, Great Lakes Truck Equipment became America's Body Company ("ABC"), and appellee transitioned into a sales position.[1]

{¶ 4} Subsequently, appellee's responsibilities began to increase and expand to areas outside of Northeast Ohio. From 1991 until 1998, appellee acted as Vice President of Sales and Vice President and General Manager of ABC. In 1998, appellee was promoted to Vice President of National Dealer Sales. In this position, appellee's sales territory included the entire United States, excluding those areas where an ABC division was located.

{¶ 5} In 1998, ABC's former owner sold the company to appellant. As part of the sale, certain employees, including appellee, were given the opportunity to purchase shares of appellant's stock. Appellee purchased appellant's stock and, in doing so, executed a standard Security Holders' Agreement. The agreement contained a noncompetition provision, which stated:

{¶ 6} "Each Employed Security Holder acknowledges and agrees that * * * during the period Employed Security Holder is employed by the Company and for a period of two (2) years thereafter, he will not, except in furtherance of his employment with the Company, either directly or indirectly (a) solicit business from, or compete with the Company for the business of any customer of the Company or (b) operate, control, advise, be engaged by, perform any consulting services for, invest in (other than less than one percent of the outstanding stock in a publicly held corporation which is traded over-the-counter or on a recognized securities exchange) or otherwise become associated in any capacity with, any business, company, partnership, organization, proprietorship, or other entity who or which manufactures, sells or distributes products in competition with the

_____

1. The majority of appellee's employment took place at ABC's headquarters in Cuyahoga County, Ohio.

business of the Company in those geographical areas in which the Company conducts or has conducted such business during the Employment Period."

{¶ 7} The agreement also included a nondisclosure provision, to wit:

{¶ 8} "Each Employed Security Holder agrees at all times to hold as secret and confidential * * * any and all knowledge, information, developments, manufacturing and trade secrets, know-how and confidences of the Company or its business of which he has knowledge as of the date hereof, or of which he may acquire knowledge during the Employment Period, to the extent such matters have not previously been made public ('Confidential Information'). The phrase 'made public' as used in this Agreement shall apply to matters within the domain of (a) the general public or (b) the Company's industry. Each Employed Security Holder agrees not to use such knowledge for his own benefit or for the benefit of others or, except as provided above, disclose any of such Confidential Information without the prior written consent of the Company, which consent shall make express reference to this Agreement."

{¶ 9} Moreover, the agreement contained a noninterference provision that stated, "Each Employed Security Holder agrees that during * * * employment * * * and for a period of three (3) years thereafter, he will not * * * directly or indirectly solicit, induce or attempt to solicit or induce any employee, agent or other representative or associate of the Company to terminate its relationship with the Company or in any way interfere with such a relationship or a relationship between the Company and any of its suppliers or distributors."

{¶ 10} In November 2002, appellee, as part of a divorce settlement, transferred his shares of appellant's stock to his minor children. The stock was simultaneously placed in a trust for the benefit of his children. Subsequently, on or about November 15, 2002, appellee resigned from his employment with appellant. Shortly thereafter, appellee was employed by Supreme Corporation ("Supreme"). Supreme is engaged in essentially the same business as appellant and is a direct competitor.

{¶ 11} On March 7, 2003, appellant filed a verified complaint for injunctive relief and money damages. The complaint alleged that appellee had breached the agreement and, therefore, that appellant was entitled to a preliminary injunction.[2] Specifically, appellant alleged that based upon appellee's employment with Supreme and his "calling on, selling to, or providing services to current, former or potential customers of [appellant] subsequent to his leaving

---

**2.** As an aside, appellee's complaint also stated causes of action for tortious interference with business relationships, unfair competition, and misappropriation of trade secrets. For each claim, appellee prayed for monetary damages and declaratory judgments. However, the sole issue on appeal is the trial court's denial of appellant's request for a preliminary injunction.

employment with [appellant] within that same geographic area, [appellee had] breached the terms of the Agreement, including the noncompetition, nondisclosure, and noninterference provisions thereof."

{¶ 12} A hearing on the complaint's request for injunctive relief commenced on March 27, 2003. Following the hearing, the trial court issued a judgment entry denying appellant's request for a preliminary injunction. The court made the following determinations: (1) appellant and Supreme are competitors and do business throughout the United States; (2) appellant's and Supreme's pricing of products varies between buyer dealerships, but such pricing is "widely known throughout the industry as the dealerships will play off against each company to get the best deal possible for themselves"; (3) "[t]he existence of accounts are basically that each company can go to the phone book and look up auto dealers and call on them to see if they can sell their product"; and (4) appellee, through a divorce decree, has placed his shares of appellant's stock in trust for his children; thus, he is no longer a shareholder.

{¶ 13} Based upon these determinations, the court concluded that the noncompetition provision was overly broad because it had no geographical limits and it prohibited appellee from working for two years in the only field he knows. The court further determined that because appellee was no longer a shareholder, appellant had no legitimate business interest to protect. Accordingly, the trial court denied appellant a preliminary injunction that would forbid appellee's employment with Supreme. Furthermore, the court noted that because its "judgment will affect a substantial right of Plaintiff, * * * this is a final appealable order, and there is no just reason for delay of appeal of this entry of judgment."

{¶ 14} From this judgment, appellant filed a timely notice of appeal and now sets forth the following assignment of error for our consideration:

{¶ 15} "The trial court erred to the prejudice of Plaintiff–Appellant in denying its Motion for Preliminary Injunction."

{¶ 16} Under its sole assignment of error, appellant presents the following three separate issues for our review: (1) whether the trial court erred in deciding that the noncompetition provision was overly broad, (2) whether the trial court erred by refusing to exercise its power to modify the agreement's noncompetition, nonsolicitation, and nondisclosure provisions, and (3) whether the trial court erred in determining that appellee's transfer of his shares relieved him of his obligations under the agreement.

{¶ 17} We must first determine whether the court's denial of injunctive relief was a final appealable order. It is well established that the determination as to whether an appeal is immediately appealable is a threshold issue that must

be resolved, conceptually at least, before the determination of the appeal on its merits. *Premier Health Care Services, Inc. v. Schneiderman* (Aug. 21, 2001), 2nd Dist. No. 18795, 2001 WL 1479241, at * 2.

{¶ 18} Ordinarily, an order issuing or denying a preliminary injunction is not a final appealable order. *Hemberger v. LaBrae Bd. of Edn.* (Dec. 5, 1997), 11th Dist. No. 96–T–5567, 1997 WL 772939. However, an order denying a request for a preliminary injunction will be considered a final order if it meets the requirements of the two-prong test established by R.C. 2505.02.

{¶ 19} R.C. 2505.02 provides:

{¶ 20} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

{¶ 21} "* * *

{¶ 22} "(4) An order that grants or denies a provisional remedy and to which both of the following apply:

{¶ 23} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy;

{¶ 24} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."

{¶ 25} A "provisional remedy" is defined as "a proceeding ancillary to an action" and expressly includes an order for a preliminary injunction. R.C. 2505.02(A)(3).

{¶ 26} The first prong of the test has been satisfied, as the court has issued an order determining the action with respect to the provisional remedy of a preliminary injunction, and this order prevents a judgment in favor of appellant with regard to the preliminary injunction. Accordingly, we will now examine the second prong.

{¶ 27} The second prong of the test requires a determination as to whether the court's denial of appellant's preliminary injunction precludes a meaningful or effective remedy via appeal, following a final judgment as to all the claims in the action. R.C. 2505.02(B)(4)(b). In deciding this question, we "do not construe R.C. 2505.02(B)(4)(b) to require the absence of every theoretical remedy in order to find that appellant would be denied a 'meaningful' or 'effective' remedy following final judgment. This is particularly so when * * * the court will be unable to fashion a remedy which would replace a potential loss of business * * *, or repair business relationships with third parties." *Bob Krih-*

*wan Pontiac–GMC Truck, Inc. v. Gen. Motors Corp.* (2001), 141 Ohio App.3d 777, 781, 753 N.E.2d 864. See, also, *Premier Health Care Services, Inc.* at * 3.

{¶ 28} Here, appellant's complaint stated claims for both monetary damages and injunctive relief. Appellant's claim for injunctive relief centered upon the theory that without a preliminary injunction, it will lose market share, be forced to compete with a former employee, and be subject to the possible dissemination of trade secrets. Accordingly, a reversal following a final judgment would not remedy those damages arising from the foregoing during the time the injunction would have been in effect. See, e.g., *Premier Health Care Services, Inc.* "The appellant would essentially be deprived of a remedy because the passage of time would render moot any review sought." Id., at * 3, citing *Penko v. Eastlake* (Dec. 11, 1998), 11th Dist. No. 98–L–186, 1998 WL 1145267. Thus, the court's order denying appellant's preliminary injunction was a final appealable order.

{¶ 29} We will now examine the merits of appellant's assignment of error. Although the trial court failed to specifically mention either the noninterference provision or the nondisclosure provision, the court's determination that appellee was no longer a shareholder disposed of all three relevant provisions of the agreement. After careful examination of the record before us, we agree with the trial court that the noncompetition, noninterference, and nondisclosure provisions were not applicable, because appellee was not a shareholder.

{¶ 30} "We review a trial court's decision to grant injunctive relief only for an abuse of discretion." *Meade v. Beverly Enterprises–Ohio, Inc.,* 154 Ohio App.3d 521, 2003-Ohio-5231, 797 N.E.2d 1040, at ¶ 11. "Abuse of discretion" connotes more than a mere error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 31} The trial court may consider the following factors when determining whether injunctive relief is appropriate:

{¶ 32} "(1) [T]he likelihood of the plaintiff's success on the merits, (2) whether there exists an adequate remedy at law, (3) whether the injunction would prevent irreparable harm, (4) a balancing of the potential injury to the defendant and the general public, and (5) whether the injunctive relief sought is for the purpose of maintaining the status quo pending a trial on the merits." *Rein Constr. Co. v. Trumbull Cty. Bd. of Commrs.* (2000), 138 Ohio App.3d 622, 630–631, 741 N.E.2d 979.

{¶ 33} In an action for a temporary or permanent injunction, the plaintiff must prove his or her case by clear and convincing evidence. *Franklin Cty. Bd. of Health v. Paxson,* 152 Ohio App.3d 193, 2003-Ohio-1331, 787 N.E.2d 59, at ¶ 25.

{¶ 34} That being said, "[i]n construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties." *Aultman Hosp. Assn. v. Hosp. Care Corp.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. When the language of the written instrument is clear and unambiguous, the interpretation of the instrument is a matter of law, and the court must determine the intent of the parties through the language employed. *Seminatore v. Med. Mut. of Ohio* (2000), 136 Ohio App.3d 758, 763, 737 N.E.2d 1016. "A court must give effect to the contract's express terms in determining the rights and obligations of the parties and cannot, in effect, create a new contract by finding an intent not expressed in the clear language used by the parties." Id.

{¶ 35} The unambiguous language of the noncompetition, noninterference, and nondisclosure provisions clearly limits their application to an "Employed Security Holder." In its definition section, the agreement defines "Employed Security Holder" as "an individual Security Holder." Under the agreement, a "Security Holder" is a "Shareholder." Finally, "Shareholder" is defined as "each registered holder of issued and outstanding Shares, each other Person who becomes bound by this Agreement as a Shareholder after the date hereof, and any executor, administrator, guardian, custodian, trustee, receiver, or other legal representative of a Person who obtains legal or beneficial ownership of any Shares and the ability to transfer the same in the event of another's death, Disability or other incapacity; *provided, in any event, that a Person who no longer owns any Shares shall be deemed not to be a 'Shareholder.'* " (Emphasis added.)

{¶ 36} During the hearing on appellant's request for a preliminary injunction, appellee gave the following testimony on direct-examination:

{¶ 37} "Q: Do you still own the stock?

{¶ 38} "A: No I do not.

{¶ 39} "Q: And why not?

{¶ 40} "A: I had a lengthy divorce that took over a couple of years. It was all, the value of the stock, my wife wanted full value that was paid.

{¶ 41} "Q: Is that your ex-wife?

{¶ 42} "A: My ex-wife, correct. And the only way the settlement could be made was to transfer the stock into my three children's names equally.

{¶ 43} "Q: When was that transfer accomplished?

{¶ 44} "A: I signed the shares of stock along with the legal department. I believe it was November 13th or November 14th.

{¶ 45} "Q: And was this stock transfer approved by the board of LCP holding?

{¶ 46} "A: Yes, it was. And that took some time to occur, but yes, it was.

{¶ 47} "Q: As we sit here today do you have any control whatsoever over the stock that you have just testified about?

{¶ 48} "A: No, I do not.

{¶ 49} "Q: I believe you testified that the stock is currently in a trust?

{¶ 50} "A: Yes, it is.

{¶ 51} "Q: And I take it you are not the trustee of the trust?

{¶ 52} "A: No, I am not."

{¶ 53} The foregoing shows appellee's relinquishment of any ownership interest in the stock, resulting from his gift to, and transfer of, the shares to his three children.

{¶ 54} An appropriate transfer of a security requires delivery. See, e.g., R.C. 1308.27; U.C.C. 8–301. Here, delivery occurred when appellee surrendered possession of the stock and endorsed the stock to his children as owners. R.C. 1308.27. Thus, appellee's children became the registered holders of appellant's stock. Because appellee's children became the sole registered holders of appellee's shares of stock, appellee was no longer a shareholder.[3]

{¶ 55} Likewise, appellant's transfer of the stock to a trust also confirmed that he was not a shareholder. When a trust is created the settlor must transfer and deliver the property to a trustee. See, e.g., *Nozik v. McDonald* (1994), 99 Ohio App.3d 353, 650 N.E.2d 923. Delivery necessitates the settlor's "relinquishment of ownership, dominion and control over [the property]." *Bolles v. Toledo Trust Co.* (1936), 132 Ohio St. 21, 27, 7 O.O. 60, 4 N.E.2d 917. Thus, appellant's transfer and delivery of the stock to a trust to be held by a trustee relinquished his ownership, dominion, and control over the stock. For this additional reason, appellant was not a "shareholder" as defined by the agreement.

{¶ 56} Appellant failed to provide any evidence that would contradict the testimony that established appellee's transfer and delivery of his shares of stock to his three children and the subsequent placement of those shares in a valid trust. Accordingly, the trial court did not abuse its discretion in determining that appellee was no longer a shareholder of appellant's stock.

{¶ 57} Nevertheless, appellant argues that despite appellee's transfer of ownership, the trial court erred in refusing to grant a preliminary injunction. Specifi-

---

3. Under the Uniform Transfers to Minors Act a transfer of a security to a minor child by registering the security in the minor child's name will irrevocably convey to the minor an indefeasibly vested legal title to the conveyed property. R.C. 1339.33 and 1339.32. See, e.g., *Stewart v. Natl. City Bank,* 7th Dist. No. 98–BA–26, 2001-Ohio-3221, 2001 WL 315191.

cally, appellant argues that the language of the agreement clearly shows the parties' intent to apply the noncompetition, noninterference, and nondisclosure provisions to a *former* shareholder. In support of its contention, appellant points to section 2.7 of the agreement, which sets forth terms allowing security holders to transfer shares to their children, or to create a trust for the benefit of their children. Appellant argues that section 2.7 demonstrates the parties' intent "to bind Appellee to postemployment covenants."

{¶ 58} As mentioned previously, the pertinent language of the agreement is clear and unambiguous. The noncompetition, noninterference, and nondisclosure provisions pertain exclusively to an "Employed Security Holder." The agreement then excludes any individual who does not own appellant's stock from being an "Employed Security Holder." Absent is any language establishing that an "Employed Security Holder" is bound by the terms of the agreement when the "Employed Security Holder" is no longer a shareholder of appellant's stock.

{¶ 59} Moreover, section 2.7, when read in its complete context, merely provides an exception to the agreement's general prohibition against the transfer of stock, as stated in section 2.1. In other words, the sole purpose of section 2.7 simply fails to show the parties' intent to bind appellee to postemployment covenants. Thus, this portion of appellant's assignment of error is not well taken.

{¶ 60} Appellant's assignment of error further argues that the trial court erred by failing to modify the restrictive covenants of the agreement to protect its legitimate business interests. We disagree.

{¶ 61} Although a trial court may modify an unreasonable restrictive covenant to make it reasonable and enforceable, it is not required to do so. *Professional Investigations & Consulting Agency, Inc. v. Kingsland* (1990), 69 Ohio App.3d 753, 761, 591 N.E.2d 1265, (holding that modification of an unreasonable restrictive covenant is within the discretion of the trial court). Because the decision to modify the noncompetition, noninterference, and nondisclosure provisions was within the trial court's discretion, the court did not abuse its discretion by declining to modify the restrictive covenants. The modifications requested by appellant would entail substantial changes to the agreement. Thus, this portion of appellant's assignment of error is also not well taken.

{¶ 62} Based upon the foregoing analysis, appellant's assignment of error is without merit. The terms of the noncompetition, nondisclosure, and noninterference provisions of the agreement were not applicable to appellant as he was not a shareholder. Accordingly, we hereby affirm the judgment of the trial court.

Judgment affirmed.

WILLIAM M. O'NEILL and DIANE V. GRENDELL, JJ., concur.