OPINION
{¶ 1} Appellants, Richard P. Marchus, et al., appeal from the judgment entry entered by the Lake County Court of Common Pleas after a bench trial enjoining them from operating their dog training business on their residential property. As the record supports the trial court's determination, we affirm.
 {¶ 2} Appellee, Rockwood Homeowners Association, consists of the owners of ten individually owned tracts of land of varying acreage located on Girdled Road in *Page 2 
Concord Township, Lake County, Ohio. Each owner has his or her primary residence situated on the property. The residences are accessed by Rockwood Lane, a paved, private road running off Girdled Road.
 {¶ 3} The Development was started by David Bailey and David Keys when they purchased the eighty five acre parcel of land which would eventually become Rockwood Estates. Bailey and Keys sold large parcels of the land to individual buyers who, in turn, erected residential homes on the properties. Bailey, with the assistance of sample documents, drafted specific land use restrictions which were attached to each deed and duly recorded on May 8, 1984. Bailey testified his intent in drafting the restrictions was to preserve the rustic character of the land while permitting property owners to operate a home-based business without detracting from the rural atmosphere.
 {¶ 4} With this in mind, Section I(A) of the Declaration of Restrictions provides: "* * * No commercial or institutional activity shall be conducted on these lots, which is not wholly contained within the residential dwellings or which causes damage to the private gravel drive by heavy vehicles." Bailey also drafted Bylaws for the Homeowners Association which incorporated the restrictions. The Bylaws were unanimously adopted by all owners on November 19, 1990. Appellants, who purchased their home in Rockwood Estates on July 13, 1989, were among the owners who approved the Bylaws.
 {¶ 5} Throughout the existence of the development, various owners have operated home-based businesses from their Rockwood Estates residences: Bailey has operated (and still operates) a pest control business; resident Ron Ball operates a *Page 3 
security systems business. Moreover, former residents James Bly and Ray King operated businesses from their residences before moving from the development (Bly, a log home construction business and King, a tree maintenance business). Testimony indicated that the commercial activities engaged in by these individuals invariably took place away from their residences in Rockwood Estates.[1] While Bailey, Bly, and King testified that they had occasion to store equipment and supplies outside of their residences on their trucks or within garages, testimony indicated the commercial aspects of their businesses which took place in Rockwood Estates, i.e., purchasing supplies, setting appointments, and accounting work, were performed wholly within their residential dwellings.
 {¶ 6} On or about September 5, 2001, appellants filed an application for a zoning permit with the Concord Township Board of Trustees for approval to construct a 60' X 80' building to be used as a dog training facility. Once construction was complete, appellant Greta Marchus commenced her dog training business in the new outbuilding. Appellants conducted one class on Monday and two classes per day from Tuesday through Saturday. Mrs. Marchus testified that while some attendees would arrive with two or three dogs, she limited the commercial vehicle traffic to ten cars per class.
 {¶ 7} On September 3, 2005, appellee filed a complaint to enjoin appellants from continuing operation of their commercial activities from the outbuilding on their property. The complaint alleged appellants' actions were in violation of the restrictive *Page 4 
covenant set forth in Section I(A) of the Declaration of Restrictions. Appellants filed a timely answer and counterclaim against appellee asserting appellee waived and/or abandoned enforcement of the subject restriction, and a cross-claim against the homeowners in Rockwood Estates, identifying their interests as the same as appellee's and thus adverse. Timely answers were filed.
 {¶ 8} A bench trial was held on April 6, 7, and 10, 2006. At trial, appellee alleged appellant's business was in violation of Section I(A) of the Declarations of Restrictions. Appellants conceded that their business activities were conducted on their lot and were not contained within the residential dwelling. However, they alleged the restrictions had been waived or abandoned by appellee's failure to enforce the restrictions against the past violations of other property/business owners. At its conclusion the trial court enjoined appellant's from operating their dog training business on their residential property and denied appellant's counter claim and cross claims. Appellants now appeal and assert the following assignment of error:
 {¶ 9} "The trial court's ruling of June 15, 2006 is contrary to law and against the manifest weight of the evidence."
 {¶ 10} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."CE. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280. In resolving an appeal based upon a challenge to the weight of the evidence, a reviewing court is guided by the presumption that the findings of the trier of fact are correct. Cohen v. Lamko, Inc. (1984),10 Ohio St.3d 167, 169. *Page 5 
Thus, if the evidence is susceptible to more than one interpretation, a reviewing court will give the evidence an interpretation which is most favorable to sustaining the trial court's determination. Seasons CoalCo., supra. Furthermore, the issuance of an injunction is a matter of judicial discretion. Meade v. Beverly Enterprises-Ohio, Inc.,154 Ohio App.3d 521, 524, 2003-Ohio-5231. If the trial court's determination was neither arbitrary nor unreasonable, its decision is entitled to deference and will not be disturbed on appeal. See Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} Although the structural validity of the restriction was not an ostensible issue before the trial court, appellant first argues the restriction fails to follow a "general use plan." In the interest of a complete analysis, we shall briefly address this assertion.
 {¶ 12} It is well-established that restrictive covenants on the use of property are generally viewed with disfavor. Garvin v. Cull, 11th Dist. no. 2005-L-145, 2006-Ohio-5166, at ¶ 19. However, this disfavor may be overcome by evidence of a plan or scheme into which the restrictions are incorporated and notice of that plan or scheme. Bailey Development Corp.v. MacKinnon-Parker, Inc. (1977), 60 Ohio App.2d 307, paragraph one of the syllabus. A plan designed to maintain the harmony and aesthetic balance of a community will often be upheld where the restrictions are reasonable. Garvin, supra, at ¶ 21, citing, Beckett Ridge Assn.-I v.Agne (1985), 26 Ohio App.3d 74, 76.
 {¶ 13} Evidence indicated the restriction was drafted with the intent of maintaining the bucolic atmosphere of the development and to prohibit increased traffic from entering and exiting the development. At trial, Mr. Bailey, a founding member of *Page 6 
the development and the drafter of the deed restrictions and by-laws, discussed the nature of his intent in drafting the restrictions:
 {¶ 14} "I envisioned a rural atmosphere, houses far apart, very few houses. I envisioned that it would be safe that it would be a place that your children could play out on the private drive. * * * Since I operated a business in Willoughby-on-the-Lake, I had every intention of continuing to operate a business at my new residence, and I wanted everyone else to be able to operate a home-based business. So, in the deed restrictions, I stated that — you know, I figured that if you limited the operation of your business to within the dwelling of your home, that you didn't construct an outbuilding in which you conducted business, that that in itself would reduce and limit the amount of traffic that you could possibly have come down the road."
 {¶ 15} The Declaration of Restrictions was subsequently recorded.
 {¶ 16} The Declaration of Restrictions is uniform and applies to all property owners in the development. Moreover, the restriction at issue represents an attempt to preserve the quiet, rustic quality of the land on which the development was built. When the evidence is viewed as a whole, we conclude the restrictions and the development to which they pertain are premised upon a general plan or scheme.
 {¶ 17} Further, "[a] grantee in a conveyance of land subject to restrictions of record is deemed to have notice thereof from the recording of a declaration of reservations and restrictions incident to the platting of an allotment * * *." Carranor Woods Property Owners' Assn.v. Discoll (1957), 106 Ohio App. 95, paragraph two of the syllabus; see, also, Shurenberg v. Butler Cty. Bd. of Elections (1992), *Page 7 78 Ohio App.3d 773, 777 (holding that the recordation of declaration of restriction sufficient to provide constructive notice of the same). Finally, appellants personally approved of the "Official Bylaws" of the Association which included a provision incorporating the Declaration of Restrictions.
 {¶ 18} We believe the following evidence is sufficient to establish appellants had notice of the restrictions. Consequently, we hold the restriction is valid and enforceable. Absent proof of abandonment and/or waiver, the court did not err in enforcing the restrictive covenant at issue.
 {¶ 19} With respect to an assertion of waiver or abandonment, "the test is whether, under the circumstances, there is still a substantial value in such restriction, which is to be protected; and where there is a substantial value to the dominant estate remaining to be protected, equity will enforce a restrictive covenant * * *." Romig v. Modest (1956),102 Ohio App. 225, paragraph three of the syllabus; see, also,Landen Farm Community Services Ass'n, Inc. v. Schube (1992),78 Ohio App.3d 231, 235. A party alleging a waiver and/or abandonment has the burden of proving his or her allegations. Id. at paragraph four of the syllabus.
 {¶ 20} Various residents testified regarding concerns they had since appellants opened their business on their property. In particular, the residents testified the increased traffic created congestion and destroyed the rural atmosphere of the development. Further, because the residents were responsible for the upkeep and maintenance of their private drive, some expressed concerns about the heightened expense of repairs resulting from the increased wear and tear. Some expressed *Page 8 
worries about being exposed to liability if any of appellants' clientele happened to be injured on the private road. Moreover, one resident was concerned that the failure to enforce the restriction in this situation would render it functionally void and unenforceable in the future; such an outcome would be undesirable to the community as a whole.[2]
 {¶ 21} The concerns expressed are legitimate and rationally related to appellants' violation of the covenant. We therefore hold, in view of the circumstances, there is still a substantial value in the restriction. In this respect, the trial court did not abuse its discretion in upholding the restriction and enjoining appellants' activities.
 {¶ 22} That said, the Fifth Appellate District has interpreted theRomig test in terms of acquiescence. Specifically, if there has been a general acquiescence in the violation of the restriction, the restriction is rendered unenforceable. Colonial Estates Home OwnersAss'n, Inc. v. Burkey (Oct. 7, 1997), 5th Dist. No. 97AP020013, 1997 Ohio App. LEXIS 5023, *9, citing Lander Farms, supra.
 {¶ 23} With respect to this formulation, appellant maintains the commercial activity conducted by other lot owners was not confined to or wholly contained within their residential dwellings. Because the Association has continuously failed to enforce the restriction at issue, appellant contends the restriction was waived or abandoned through acquiescence. *Page 9 
 {¶ 24} We initially point out that the restriction does not completely prohibit businesses from being conducted on the lots in the development. A resident may operate a business so long as it is confined to the residential dwelling. The record reveals that four residents, not including appellants, operated (or have operated) businesses from their home: David Bailey operates a pest control service; Ron Ball operates a security service; James Bly operated a log home construction business;[3] and, Ray King operated a tree removal service.[4]
Testimony demonstrated that the commercial activities performed by each of these businesses occurred at a customer's home and not on the residential lot of the property/business owner. In other words, no commercial activity was conducted on the lots. The Association could only enforce a restriction where a violation was manifest. Under the circumstances, the evidence failed to show that Bailey's, Bly's, King's, or Ball's business operations necessarily ran afoul of the plain meaning of the restriction.
 {¶ 25} However, appellant's brief asserts there was "copious testimony" at trial demonstrating that the foregoing property/business owners' commercial activity was not confined to, or wholly contained within their residential dwellings. Appellant fails to point to any specific evidence of a violation. However, our review of the record reveals the following testimony which would lend support to appellant's position: Mr. Bailey testified he keeps all of his business supplies in his truck; Mr. Bly testified he periodically stored surplus supplies in a garage owned by another resident; and Mr. King testified he kept *Page 10 
his tree trimming equipment outside of his home. Storing business supplies in one's vehicle, in a garage, or in one's driveway is ancillary or coincidental to a commercial activity. We do not believe the act of storage is a commercial activity unto itself and thus do not believe the foregoing testimony represents instances of violations.
 {¶ 26} Even were we to construe the other owners' storage a violation of the covenant, we believe any such violation could be reasonably construed as a de minimis violation. See Berry v. Paisley (1990),66 Ohio App.3d 77, 82. In Berry, the Sixth Appellate District was asked to determine whether a restrictive covenant on land use was abandoned by virtue of a general acquiescence to prior violations. The restrictions at issue provided that boathouse owners could use but not obstruct the lateral waterway adjacent to their buildings and were prohibited from adorning their buildings with exterior alterations or additions without majority approval from other owners. The appellants renovated their building with various additions without the requisite approval. The additions included a bay window and an intended storage area which would extend some eight feet over the waterway. The trial court found the appellants in violation of the restrictions, ordered the removal of the window and enjoined any further construction.
 {¶ 27} On appeal, the appellants argued that the restriction was abandoned because other owners had violated the restriction without consequence. As evidence of abandonment, the appellants referred to a T.V. antenna on the boathouse of one owner, angle irons installed on the boathouse of another owner, and a rain gutter and overhang installed by a third owner. In affirming the trial court's decision, the appellate court held *Page 11 
the infractions de minimis violations which did not constitute an abandonment or waiver of the building restrictions. Id. at 82, citing,McGuire v. Caskey (1900), 62 Ohio St.419, 427.
 {¶ 28} In Berry, the court determined that actual violations of the building restrictions were de minimis. Here, appellants have failed to clearly prove that storage of supplies incident to the other property/business owners' commercial activities constitute actual violations. Even if appellant put forth sufficient proof that the other owners acted in violation of the "wholly contained" requirement, however, we hold any violation would be de minimis pursuant toBerry.
 {¶ 29} Appellants' sole assignment of error is therefore overruled.
 {¶ 30} For the reasons set forth above, appellant's assignment of error lacks merit. Therefore, the Lake County Court of Common Pleas is hereby affirmed.
MARY JANE TRAPP, J., concurs,
COLLEEN MARY OTOOLE, J., dissents.
[1] Bly testified he used his own log home to show to potential customers and used the upstairs of his garage as an office. Bly estimated the traffic flow for potential customers which visited his home ranged between 26-28 people annually.
[2] Several residents also voiced concerns about their property value diminishing. Appellants point out that James Bly sold his home in 2005, while appellants' business was in full operation, for $425,000, twenty five percent above the auditor's appraisal. The amount Bly received for his home does show that the issue of depreciation may not be realistic. However, this evidence is not, of itself, sufficient to demonstrate the restriction has no substantial value to the development and its residents.
[3] James Bly sold his home in 2005.
[4] Ray King moved out of the development in 1994 but operated his business from his home from 1983 to 1994. *Page 1