[Cite as *Gionino's Pizzeria, Inc. v. Reynolds*, 2021-Ohio-1289.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

GIONINO'S PIZZERIA INC.,

Plaintiff-Appellant,

v.

JAMES F. REYNOLDS JR., et al.,

Defendants-Appellees.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 20 CA 0940

---

Civile Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2019 CVH 29449

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Clair E. Dickinson, Atty. Nicholas P. Capotosto, Atty. Daniel L. Silfani*, and *Atty. Christopher T. Teodosio*, Brouse McDowell, L.P.A., 388 South Main Street, Suite 500, Akron, Ohio 44311, for Plaintiff-Appellant.

*Atty. Jude B. Streb* and *Atty. Justin S. Greenfelder*, 4277 Munson Street NW, Canton, Ohio 44718, for Defendants-Appellees.

Dated:  March 31, 2021

_____

**WAITE, J.**

{¶1}   Appellant Gionino's Pizzeria, Inc., appeals from a judgment of the Carroll County Court of Common Pleas granting in part and denying in part Appellant's motion for a preliminary and permanent injunction against Appellees, James Reynolds ("Reynolds") and Livinthedream, Inc.  For the following reasons, we reverse the judgment of the trial court and remand the matter for a hearing on Appellant's motion for injunctive relief.

<u>Factual and Procedural History</u>

{¶2}   Appellant operates over 45 pizzeria franchises in the region.  In 2006, Jeremy Larkin ("Larkin"), Mark Mitchell and JAE Twin, Inc. (collectively "JAE Twin"), entered into a franchise agreement with Appellant to open a Gionino's Pizzeria franchise in Carrollton, Ohio.  In 2009 JAE Twin was looking to sell the franchise.  JAE Twin subsequently sold the franchise to Appellees, James F. Reynolds and Livinthedream, Inc., purportedly pursuant to a written agreement.   Reynolds had worked for JAE Twin at the Carrollton Gionino's franchise for a number of years and was familiar with the operation of the pizzeria.

{¶3}   The parties have differing accounts of the nature of the franchise sale, including:  (1) whether any contractual relationship exists at all between the parties; (2) the terms and conditions of the sale of the franchise and whether the sale properly incorporated the original franchise agreement between Appellant and JAE Twin.  JAE Twin, through the testimony of, Larkin, testified at trial that he drafted a written sale

agreement and provided it to Appellees for signature. A copy of the Gionino's franchise agreement was attached to the sale agreement when given to Appellees. Both parties agree that a fully executed sale agreement between JAE Twin and Appellees has never been made part of the record. However, Appellees' accountant produced a copy of a written sale agreement containing only Appellee Reynold's signature, which was not witnessed. A copy of the Gionino's franchise agreement was not attached. The sale agreement signed by Reynolds was admitted into evidence at trial as Plaintiff's Exhibit 5. The sale agreement itself refers to "a certain Sales Agreement." Appellant contends this language is actually a reference to the Gionino's franchise agreement. The lion's share of Appellant's arguments are based on this sale agreement and the alleged incorporation by reference of the Gionino's franchise agreement. All described facts are derived from a statement of evidence made pursuant to App.R. 9(C) and issued by the trial court, after an opportunity for objections and amendments by both parties. A technical difficulty prevented the hearing held by the trial court from being recorded.

{¶4} Exhibit 5 provides that "[s]eller shall assign all rights and liabilities created by a certain Sales Agreement attached hereto and made with Gionino's Pizzeria, Inc." (Statement of Evidence, p. 8.). Exhibit 5 also recites that Appellees were purchasing "assets, goodwill, going concern value and right to use the name of Gionino's Pizzeria" for a purchase price of $65,000. (Statement of Evidence, p. 8.) Exhibit 5 allowed Appellant the right of first refusal under the "aforementioned Agreement" which, again, Appellant contends is a reference to the Gionino's franchise agreement. (Statement of Evidence, p. 8.)

**{¶5}**  Appellant asserts that the original franchise agreement incorporated into the sale agreement required that any Gionino's franchise assignment must be preapproved by Appellant and that any assignment must also acknowledge that all rights assigned to Appellees were subject to the rights of Appellant as set forth in that Gionino's franchise agreement, including a covenant not to compete.  There is evidence that Appellant provided consent to the transfer and Appellees paid the required $5,000 franchise transfer fee, as memorialized in a letter dated March 30, 2009 from Appellant to JAE Twin, made part of the record.  (Statement of Evidence, Exh. 3.)  In 2012 Appellees requested menu changes to accommodate their lack of sales of certain items, which was approved by Appellant.  The Gionino's franchise agreement required Appellees to purchase food items from Appellant's exclusive food distributor, Hillcrest Foods.  Appellees acknowledged in their written business plan that they were required to use Hillcrest Foods, but that they also intended to purchase certain items at wholesale clubs in order to save money.  (Statement of Evidence, Exh. 6.). Appellant discovered that Appellees were purchasing food items from other suppliers in breach of the franchise agreement, causing product inconsistency.  Appellees were then informed in writing that they were in breach of the Gionino's franchise agreement.  A copy of the cease and desist letter was made a part of the record filed under seal. (Statement of Evidence, Exh. 11.)  Appellees failed to correct their behavior and Appellant terminated the franchise on October 14, 2019.  The cease and desist letter included a termination notice which, pursuant to the Gionino's franchise agreement, required Appellees to:  (1) cease and desist from holding themselves out to be a Gionino's Pizzeria franchise, including forfeit of the name, marks, recipes, trademarks and trade secrets, signs or symbols; (2) submit all outstanding franchise

reports along with all outstanding franchise fees, advertising fees and royalty payments; (3) cease and desist from using any of Appellant's confidential manuals, forms and recipes; and (4) transfer their telephone number to Appellant. (Statement of Evidence, Exh. 11.) After the termination of the Gionino's franchise, Appellees changed their business name to Jimmy's Pizzeria, but continued to use the same location and the same telephone number. Appellant contends this conduct violates the terms of the franchise agreement and caused damage to Gionino's reputation and goodwill by causing customer confusion.

{¶6} According to Appellees' version of events, they were never made a party to the Gionino's franchise agreement and never agreed to be bound by its terms. This argument is entirely based on the failure to produce a fully executed sale agreement with the reverenced attachment for the record. Appellees point out that Appellant is unable to present a fully executed sale agreement and the agreement presented by Appellant does not specifically refer to a "franchise" agreement. Appellees maintain they never entered into a written sale agreement with JAE Twin and initially claimed to the trial court that a sale agreement was never presented by JAE Twin. However, Appellee Reynolds ultimately testified at the hearing that he did get such a document and gave a copy of the agreement to his accountant. Once Appellant's subpoenaed this accountant, Exhibit 5 was produced by Appellees. Appellee Reynolds has never disputed that it is his signature on the only copy of the sale agreement entered into evidence and acknowledged that it stated that Appellees were purchasing the assets, goodwill and going concern of Gionino's Pizzeria for $65,000. (Statement of Evidence, p. 10.) Appellee Reynolds also testified in his deposition that he had signed a commercial security agreement with

Portage Community Bank as the president of "Livinthedream, Inc. dba Gionino's Pizzeria" and a copy of that security agreement was made a part of the record. Appellees acknowledge that Appellant's approval was required for the transfer and do not dispute that they paid the $5,000 franchise transfer fee. However, Appellees maintain on appeal that they had only an oral contract with Appellant, the terms of which required they pay Appellant a monthly royalty of 4% in exchange for the right to use the Gionino's trade name, recipes and trademarks and to have the Carrollton franchise listed on the Gionino's corporate website. Appellees state that after Appellant terminated the relationship on October 14, 2019, they immediately ceased utilizing any of Appellant's trade secrets and no longer possess any of Appellant's trade secrets or proprietary information. Appellees argue that five days after termination they opened up "Jimmy's Pizzeria" at the same location as the Gionino's franchise and using the same phone number because they were not bound by any of the franchise termination requirements as alleged by Appellant. They contend the only relevant term in this oral agreement was payment of a 4% monthly royalty, but only so long as they were operating as a Gionino's.

{¶7} Appellant originally brought suit against Appellees in Summit County Common Pleas Court. That court transferred venue to Carroll County. According to the verified complaint, Appellant raised claims regarding breach of contract, misappropriation of trade secrets, unfair competition, and promissory estoppel. Appellant sought not only monetary damages but asked the court for injunctive relief to enjoin Appellees from operating a pizza shop in Carrollton at the same location and with the same phone number, and to enjoin Appellees from using any of Appellant's trade secrets or other proprietary information.

{¶8}    On November 15, 2019, Appellant filed a motion for a temporary restraining order and a preliminary injunction, asserting that injunctive relief was necessary to protect their trade secrets, proprietary information and the unfair competition caused by Appellees' breach of the assigned franchise agreement.  A deposition of Reynolds was taken on December 18, 2019.  At his deposition, Reynolds testified that he bought the tangible assets of the Gionino's franchise including the equipment, recipes and operations manuals.  He also testified that he was assigned the lease for the Gionino's franchise.

{¶9}    On January 7, 2020, the trial court held an evidentiary hearing, purportedly on the preliminary injunction motion.  Three witnesses testified at the hearing:  (1) Samuel Owen, President of Gionino's Pizzeria; (2) Larkin, a Gionino's franchise owner who had assigned the franchise to Appellees; and (3) Appellee Reynolds.  Owen testified that he executed the Gionino's franchise agreement between Appellant and JAE Twin.  A copy of that franchise agreement was admitted into evidence under seal.  (Statement of Evidence, Exh. 1.)  Owens testified that he felt comfortable with Appellees taking over as a Gionino's franchisee because Appellee Reynolds had worked at the Carrollton location since 2006.  (Statement of Evidence, p. 3.)  An unsigned copy of the sale agreement transferring the franchise to Appellees was admitted into evidence (Statement of Evidence, Exh. 2) as well as the March 30, 2009, letter memorializing the transfer of the Gionino's franchise and serving as a receipt for payment of the $5,000 transfer fee by Appellees.  (Statement of Evidence, Exh. 3.)  Finally, a copy of an assignment of lease related to the transfer of the lease for the real property in which the Carrollton Gionino's franchise operated was also admitted.  (Statement of Evidence, Exh. 4.)

**{¶10}** Larkin testified that he was the previous owner of the Carrollton Gionino's franchise and owns several other Gionino's franchises. He also serves as an area sales representative. Larkin testified that he entered into a signed sale agreement with Appellees to transfer the Gionino's franchise in question to Appellees. He testified that four days before the hearing, Appellant had obtained, through a subpoena served on Appellees' accountant, a copy of the sale agreement signed only by Appellee Reynolds. This copy of the sale agreement was also admitted into evidence at the hearing. (Statement of Evidence, Exh. 5.) Larkin testified that he had searched his business files for the sale agreement and found one from another franchise that was similar to the one presented to Appellees. He recalled drafting Exhibit 5 and providing it, with the franchise agreement attached to it, to Reynolds for his signature. (Statement of Evidence, p. 9.) He testified that the franchise agreement was referred to in the sale agreement as "Sales Agreement". (Statement of Evidence, p. 9.) The sale agreement obtained from Appellees' accountant contained a provision that Appellant had the option to purchase the franchise pursuant to the "aforementioned Agreement," which Larkin testified actually meant the franchise agreement. (Statement of Evidence, p. 9.) Their agreement also provided that Appellant had to consent to the transfer of the Gionino's franchise to Appellees. Larkin also testified that he had assisted in obtaining the transfer fee from Appellees in the amount of $5,000. (Statement of Evidence, p. 9.)

**{¶11}** Appellees presented the testimony of James Reynolds. He testified that he was aware the sale agreement existed and that the transfer letter he received from Appellant and provided to his bank indicated that Appellant had approved of the transfer "of the franchise agreement" in exchange for the payment of $5,000. The letter was

admitted into evidence at the hearing. (Statement of Evidence, Exh. 3.) Reynolds testified that while he had provided an affidavit earlier in the case stating he was not aware that a written sale and franchise agreement existed between Appellant and JAE Twin, he was now aware that such a sale agreement existed but he had never asked to see this agreement. (Statement of Evidence, p. 10.) Reynolds stated he never saw the sale agreement and that he did not recall giving it to his accountant. However, Reynolds did not dispute that he had given it to her or that this sale agreement had come from her files. (Statement of Evidence, p. 10.) Reynolds testified that he had been buying food items from Atlantic Foods rather than exclusively from Hillcrest Foods even though the business plan he had submitted to his bank to obtain a loan for the business reflected that he knew he was required to buy from Hillcrest exclusively. A copy of the business plan was admitted into evidence. (Statement of Evidence, Exh. 6.) Reynolds testified that after termination of the Gionino's franchise, he opened Jimmy's Pizzeria and continued to use the same telephone number and operate from the same location as the Gionino's franchise. Reynolds testified that Jimmy's Pizzeria continued to use the same point of sale system, a system that had collected customer data while he was operating the Gionino's franchise. Reynolds testified that he was aware a Gionino's franchise agreement contains restrictive covenants and that he was openly competing by operating Jimmy's Pizzeria and employing former Gionino's employees. (Statement of Evidence, p. 12.)

{¶12} On January 8, 2020, the day following the hearing, the parties filed a joint stipulated protective order. The terms included that all documents produced during discovery, including all exhibits, deposition testimony and responses to discovery, would

be deemed confidential where necessary. Either party could designate documents as confidential after making a good faith determination the document contained information that was protected from disclosure; including confidential personal information, medical information, trade secrets, personnel records, or other commercial information that was not publicly available. Any documents labeled "confidential" would be filed under seal. The opposing party could challenge the confidential designation of any document and the trial court was then authorized to make a determination as to the confidential nature of the document in question. On January 8, 2020, Appellant filed a motion to file a number of items under seal to protect trade secrets and other proprietary information, including: Appellant's Gionino's franchise agreement attached to their complaint as an exhibit; a copy of the assignment of lease attached to the verified complaint; Appellant's preliminary injunction brief and the attached exhibits; and the deposition of James Reynolds. The trial court granted the motion and the documents were ordered sealed in the record.

{¶13} On January 28, 2020, the trial court issued an order which purported to grant the preliminary injunction in part and deny it in part. In this order the court concluded: (1) Appellant's motion for preliminary injunction on the basis of breach of contract was denied because Appellant failed to prove a contract existed between Appellant and Appellees; (2) regarding the relief sought for misappropriation of trade secrets, Appellant presented sufficient evidence that Appellees possessed operations manuals, recipes, printed forms and a point of sale system that tracked customers; (3) regarding unfair competition, the trial court concluded that Appellant's unfair competition claim was essentially a noncompete claim, and better suited to Appellant's breach of contract argument, but that Appellant had failed to establish a breach of contract.

Case No. 20 CA 0940

**{¶14}** Based on the decision to partially grant a preliminary injunction, the trial court ordered Appellees to stop using any of Appellant's recipes, manuals, trade secrets, programs, or customer lists, and to remove all customer information and data tracking from equipment acquired prior to October 14, 2019. Appellees were also ordered to review all of their advertising materials to ensure they contained no reference to Appellant's trademark name.

**{¶15}** The trial court's App.R. 9(C) statement of evidence and the accompanying exhibits were filed under seal pursuant to the joint stipulated protection order.

**{¶16}** It is from the January 28, 2020 order that Appellant filed this timely appeal.

Jurisdiction

**{¶17}** Before addressing Appellant's assignments of error, we must consider whether the preliminary injunction order is a final appealable order subject to appellate review. The Ohio Constitution limits an appellate court's jurisdiction to the review of final judgments. (Section (3)(B)(2), Article IV, Ohio Constitution.) In the absence of a final appealable order, we must dismiss the appeal for lack of subject matter jurisdiction. *Helmstedter v. Helmstedter,* 9th Dist. No. 24237, 2009-Ohio-3559, ¶ 9. Generally, an order denying a preliminary injunction is not a final order because preliminary injunctions are considered interlocutory and impermanent in nature. *N. Fairfield Baptist Church v. G129,* 12th Dist. Butler No. CA2009-11-281, 2010-Ohio-2543, ¶ 16. However, R.C. 2505.02 sets forth a two-prong test. If both prongs are met, the order will be considered final and appealable. *Id.* It provides in pertinent part:

(A) As used in this section:

Case No. 20 CA 0940

* * *

(3)  "Provisional remedy" means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction * * *

(B)  An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

* * *

(4)  An order that grants or denies a provisional remedy and to which both of the following apply:

(a)  The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b)  The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

R.C. 2502.02.

{¶18} The parties do not dispute that preliminary injunction is a provisional remedy.  However, the crux of the conflict is whether in denying some of the requested relief, the court entirely precluded a judgment in Appellant's favor and whether subsection (b) applies.  That is, whether Appellant would have a meaningful and effective remedy by filing a later appeal following a later judgment.  Appellant concedes that typically, a

judgment denying a preliminary injunction in part or in whole is not final. In this case, Appellant contends the preliminary injunction relates to a noncompete agreement and it would suffer "immediate irreparable damage" because its trade secrets may be revealed, its privileged information may be disclosed, and its business relationships with its customers may be destroyed. (Appellant's Reply Brf., p. 2.) Appellant also cites our decision in *Blakeman's Valley Office Equip., Inc. v. Bierdeman,* 152 Ohio App.3d 86, 2003-Ohio-1074, 786 N.E.2d 917 (7th Dist.). In *Blakeman's,* an assignee of a buyer's interest in a sale agreement containing a covenant not to compete filed a complaint against the seller. The trial court denied assignee's motion seeking a preliminary injunction. We reversed and granted the preliminary injunction, concluding the covenant not to compete was assignable and enforceable. There was no analysis of whether the trial court had issued a final appealable order, but we held: "This case is a final appealable order under the current versions of R.C. 2502.02(A)(3) and (B)(4), which specifically include a 'preliminary injunction' as a final appealable order." *Id.* at ¶ 2. Appellant cites *Blakeman's* for the blanket proposition that the denial of preliminary injunction seeking enforcement of a covenant not to compete is final and appealable.

{¶19} Appellees claim the partial denial of the preliminary injunction here does not preclude a meaningful or effective remedy on appeal following final judgment because Appellant is not precluded from pursuing any remaining breach of contract, misappropriation of trade secrets, and unfair competition claims in the trial court, and has not been denied a final remedy in the matter. Appellees argue that Appellant's reliance on *Blakeman's* is misplaced for this reason.

**{¶20}** In determining whether an appellant will be denied a meaningful, effective remedy if the decision on the provisional remedy is not immediately appealable, the Ohio Supreme Court has stated:

> [R.C. 2502.02(B)(4)(b)] recognizes that in spite of courts' interest in avoiding piecemeal litigation, occasions may arise in which a party seeking to appeal from an interlocutory order would have no adequate remedy from the effects of that order on appeal from final judgment. In some instances, "[t]he proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage" suffered by the appealing party.

*State v. Muncie,* 91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2001).

**{¶21}** There have been instances where a preliminary remedy has been deemed a final order where the order compelled documents containing trade secrets or production of privileged communications or contained the denial of a request to enforce a noncompete agreement. See *Callahan v. Akron Gen. Med. Ctr.,* 9th Dist. Summit No. 22387, 2005-Ohio-5103, ¶ 28; *LCP Holding Co. v. Taylor,* 158 Ohio App.3d 546, 2004-Ohio-5324, 817 N.E.2d 439, ¶ 28 (11th Dist.); *Premier Health Care Serv., Inc. v. Schneiderman,* 2d Dist. Montgomery 18795, 2001 WL 1479241.

**{¶22}** In *Blakeman's,* although there was no analysis, we concluded that because the covenant not to compete was valid and assignable, it was necessary to have the preliminary order reversed in order for Appellant to protect its rights under that covenant. *Blakeman's,* ¶ 40.

**{¶23}** In the instant matter, Appellant sought both preliminary and permanent injunctive relief in its complaint. The motion for a temporary restraining order and preliminary injunction asserted that relief was necessary to protect their trade secrets, proprietary information and to protect them from unfair competition based on three claims: breach of contract; misappropriation of trade secrets; and unfair competition. The trial court partially denied relief with regard to the unfair competition claims. However, the court determined that Appellant failed to prove the existence of a contract between the parties. The court also concluded that Appellant's unfair competition claim was based on the noncompete clause found in the Gionino's franchise agreement, and that this claim failed because there was no proof the parties agreed to be bound by any franchise agreement. The trial court granted limited injunctive relief based on Appellant's claim for misappropriation of trade secrets and ordered Appellees enjoined from using any of Appellant's manuals, recipes, printed forms and the like; erasing some data from the point of sale equipment; and reviewing all advertising and marketing materials to ensure that Appellant's proprietary information did not appear, to avoid creating customer confusion. In reading the order as a whole, the trial court essentially completely disposed of Appellant's breach of contract and unfair competition claims. In ruling that no contract for sale contract of the business existed, thus the parties were subject to no valid franchise agreement, the trial court of necessity precluded any further action on these claims. Based on the trial court's ruling in preliminary injunction, the trial court has, in effect, barred Appellant from any meaningful or effective remedy on the rest of Appellant's claims. Other than the trial court's calling its decision a preliminary injunction, the decision for all intents and purposes disposes of all of Appellant's claims for relief. For this reason,

we conclude that this is a final appealable order pursuant to R.C. 2502.02 and this Court has subject matter jurisdiction over the matter.

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT INCORRECTLY DETERMINED THAT THE SALES AGREEMENT SIGNED BY MR. REYNOLDS DID NOT CONSTITUTE AN ENFORCEABLE CONTRACT BECAUSE A COPY OF THE SALES AGREEMENT SIGNED BY ALL PARTIES WAS NOT LOCATED.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT'S FAILURE TO DETERMINE THAT THE FRANCHISE AGREEMENT V/AS ASSIGNED TO MR. REYNOLDS AND LIVINTHEDREAM WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT INCORRECTLY DETERMINED THAT GIONINO'S WAS NOT ENTITLED TO INJUNCTIVE RELIEF TO ENFORCE THE RESTRICTIONS IN THE FRANCHISE AGREEMENT AGAINST MR. REYNOLDS AND LIVINTHEDREAM.

ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT INCORRECTLY DETERMINED THAT THE TELEPHONE NUMBER ASSOCIATED WITH GIONINO'S CARROLLTON

Case No. 20 CA 0940

FRANCHISE LOCATION FOR THIRTEEN YEARS WAS NOT REQUIRED TO BE TRANSFERRED TO GIONINO'S UPON TERMINATION OF THE FRANCHISE.

ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT INCORRECTLY DETERMINED THAT MR. REYNOLDS AND LININTHEDREAM'S CONTINUED USE OF THE TELEPHONE NUMBER FOR "JIMMY'S PIZZERIA" IS NOT UNFAIR COMPETITION WITH GIONINO'S INC.

{¶24} Appellant's assignments of error relate to the two contracts at issue in this matter: the alleged written sale agreement between JAE Twin and Appellees and the original Gionino's franchise agreement between Appellant and JAE Twin, which Appellant contends was assumed by or assigned to Appellees when purchase of the franchise was approved and finalized.

{¶25} Appellant argues in its first assignment of error that the trial court erred in concluding no contract existed between the parties because copy of the agreement that was signed by all parties was not submitted into evidence at trial. Appellant argues this presents a matter of contract interpretation, which is a question of law requiring a *de novo* review.

{¶26} A trial court's judgment regarding whether to grant an injunction is reviewed under an abuse of discretion standard. *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 653 N.E.2d 646 (1995), paragraph three of the syllabus. An abuse of discretion is more than an error of judgment; it implies that the

Case No. 20 CA 0940

court's attitude is unreasonable, arbitrary, or unconscionable. *Yashphalt Seal Coating, LLC v. Giura*, 7th Dist. Mahoning No. 18 MA 0107, 2019-Ohio-4231, ¶ 14, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). The purpose of a preliminary injunction is to preserve the status quo between the parties pending a judgment on the merits. *Chapin v. Nameth,* 7th Dist. Mahoning No. 08 MA 18, 2009-Ohio-1025, ¶ 16. A party requesting a preliminary injunction must show: (1) there is a substantial likelihood the party will prevail on the merits; (2) the party will suffer irreparable injury if the injunction is not granted; (3) no third parties will be unjustifiably harmed if the injunction is granted; and (4) the public interest will be served by the injunction. *Chapin,* ¶ 16. Each element must be established by clear and convincing evidence. *Cleveland v. Cleveland Elec. Illum. Co.,* 115 Ohio App.3d 1, 14, 684 N.E.2d 343 (8th Dist.1996). No one factor is dispositive as the court must balance all factors and weigh the equities. *Blakeman's,* ¶ 20-21.

{¶27} Appellant moved for a preliminary and permanent injunction based on three claims: (1) breach of contract; (2) misappropriation of trade secrets; and (3) unfair competition. In reality, all of the Appellant's grounds for seeking injunctive relief rely on whether a contractual relationship exists between the parties. To prevail on a breach of contract claim, Appellant must demonstrate the existence of a valid contract, performance by one party, breach by the opposing party, and that the performing party suffered damages or loss. *Price v. Dillon,* 7th Dist. Mahoning Nos. 07-MA-75, 07-MA-76, 2008-Ohio-1178, ¶ 48. The question regarding the existence of a contract raises a mixed question of fact and law. We accept the relevant facts found by the trial court that are

Case No. 20 CA 0940

supported by some competent, credible evidence, but review *de novo* the application of the law to the facts.

**{¶28}** The trial court denied Appellant's breach of contract claim concluding there were two major defects. The first relates to Appellant's first assignment of error and involves whether an agreement existed between Appellees and JAE Twin for the sale of the Gionino's franchise. Neither party was able to produce a fully executed written sale agreement between Appellees and JAE Twin. Citing *American States Ins. Co. v. Honeywell, Inc.,* 8th Dist. Cuyahoga No. 56552, 1990 WL 19319 *6, Appellant argues that it was not necessary for both parties to sign an agreement for it to be enforceable against the party to be charged with breach under the agreement. Known as constructive ratification, a partially signed contract must be considered in light of the subsequent conduct of the parties and whether their behavior shows that they were proceeding as if the contract were in effect. *Hocking Valley Community Hospital v. Community Health Plan of Ohio,* 4th Dist. Hocking No. 02CA28, 2003-Ohio-4243, ¶ 16. That is, a contract may be found to exist where the parties' behavior is consistent with the terms of an unsigned or unwritten contract. *Brown v. Lagrange Dev. Corp.,* 6th Dist. Lucas No. L-09-1099, 2015-Ohio-133, ¶ 12 citing *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.,* 54 Ohio St.2d 147, 152, 375 N.E.2d 410, 413 (1978). In *Honeywell,* a contract was found to exist between a theft alarm company and a commercial customer where the customer requested a series of changes in equipment orders as specified in the written contract, although only the alarm company agent had signed the contract. This Court has held that, conversely, where the record demonstrates one party has clearly not acted in

Case No. 20 CA 0940

accordance with an essential term of a contract, no constructive ratification has occurred. *Ameritech v. Hayman,* 7th Dist. Jefferson No. 94-J-45, 1995 WL 708578, *2.

**{¶29}** In the instant matter, the trial court correctly found that neither party presented a fully executed written sales agreement for the transfer of the Gionino's franchise from JAE Twin and Appellees. The only copy submitted was the product of a subpoena to Appellees' accountant, and this copy contained only Appellee Reynolds' unwitnessed signature. Although Reynolds first testified that he did not remember ever receiving a contract, he later testified that he did give it to his accountant and did not dispute that his signature is on the contract or that it was held by his accountant. This record reveals the only signature on this document is from the party who is not seeking to enforce the contract. This is evidence that must be considered when determining whether a valid sale contract existed. While this sale agreement does refer to an attachment, the attachment is not specifically called a Gionino's "Franchise Agreement." Instead, the document cites; somewhat confusingly, to another "Sales Agreement." The referenced "Sales Agreement" is not attached to the partially signed agreement for the sale of the business. Thus, the terms of the incorporated "Sales Agreement" are in question. But the record does show that Appellees were also aware of and operating under at least some of the terms found in a Gionino's franchise agreement, and there is a Gionino's franchise agreement in this record under which Appellant had operated and which it transferred to Appellees in the sale.

**{¶30}** It is undisputed that Appellees sought and received financing for the purchase of a Gionino's franchise and subsequently began operating as a Gionino's franchise in 2009. They continued to so operate for ten years, until October 14, 2019.

Appellees' written business plan admitted into evidence states that Appellees sought financing "to purchase Gionino's Pizzeria" because "[t]his franchise has a great reputation for a quality product and great customer service." Appellees applied for $70,000 to "pay the purchase price of $65,000 to JAE Twin, Inc. and to pay the franchise transfer fee of $5,000," acknowledging that a Gionino's franchise was being transferred or assigned to Appellees. (Statement of Evidence, Exh. 6.) The business plan also states that Reynolds was aware that the Gionino's franchise agreement stated Hillcrest Foods was the exclusive food supplier for Gionino's franchises, even though he was planning to purchase some items from other wholesalers to lower costs. Moreover, Reynolds testified in his deposition that he had purchased the assets of the franchise from JAE Twin and executed an assignment of the lease for the location. The record is clear that although no one presented a sale agreement executed by both Appellees and JAE Twin, the parties all conducted themselves according to the terms and conditions of the sale agreement. *Richard A. Berjian, D.O., Inc.* at 152. Moreover, Appellees acknowledged the key terms of the sale agreement, including purchase price, the Gionino's franchise transfer fee requirement and the purchase of all assets of the franchise in their business plan, and conducted themselves accordingly. It was the contractual relationship which enabled Appellees to lawfully operate a Gionino's franchise for ten years until it was terminated by Appellant. A review of this record shows evidence establishes not only that a valid sale agreement existed, thus a contractual relationship existed between Appellees and JAE Twin, but also contains evidence that Appellees behaved as though they were subject to the Gionino's franchise agreement, as well.

**{¶31}** According to the trial court, the second defect in Appellant's breach of contract claim is that Appellant failed to establish Appellees were bound by the terms of the original franchise agreement, because the sale agreement, even if it existed, did not adequately refer to a Gionino's franchise agreement and the franchise agreement itself was not attached to either sale agreement admitted into evidence. All of the claims Appellant alleges relating to the noncompete and unfair competition claims are directly dependent on the existence of a valid franchise agreement between the parties.

**{¶32}** Appellant asserts that the trial court erred in concluding the franchise agreement was not transferred and assigned to Appellees and that Appellant was not entitled to injunctive relief, including the transfer of the telephone number used to operate as a Gionino's pizzeria as required in the franchise agreement. Again, Appellant maintains that the sale agreement adopted and included the Gionino's franchise agreement when it referred to "a certain Sales Agreement" within the sale agreement and that this can only be a direct reference to the franchise agreement. Larkin testified he understood that the language "a certain sales agreement" was intended to refer to the Gionino's franchise agreement. (Statement of Evidence, p. 9.) Reynolds disputed this, and testified that this was not his understanding. However, he also testified that he had never read the sale agreement. (Statement of Evidence, p. 10.) Owen and Larkin testified that Larkin had attached a copy of the franchise agreement to the sale agreement when he presented it to Appellees. Appellees did not dispute this fact. However, Reynolds maintained that he had only an oral contract with Appellant which required him to pay a 4% monthly royalty fee. He testified in his deposition that had met with Owens

prior to the franchise transfer but maintains that he never signed a Gionino's franchise agreement or agreed to be bound by all of the terms of the Gionino's franchise agreement.

> An assignment is defined as a transfer to another person of the whole of any property or right therein. Black's Law Dictionary (6th Ed. 1990) 119. A valid assignment may be oral or written, and should satisfy the requirements of a contract, i.e., the legality of object, capacity of parties, consideration, and meeting of the minds. 6 Ohio Jurisprudence 3d (2011), Assignments, Section 25. An assignment, no matter how informal, may be found when there is intent on the part of the assignor to assign the rights in question, an intent on the part of the assignee to be assigned the rights in question, and valuable consideration exchanged. *Id;* see also, *Morris v. George Banning, Inc.* (1947), 77 N.E.2d 372, 374, 49 Ohio Law Abs. 530.

*Acme Co. v. Saunders TopSoil,* 7th Dist. Mahoning No. 10 MA 93, 2011-Ohio-6243, ¶ 82, J. Waite concurring.

{¶33} Any cause of action arising out of a contract may be assigned. In order to demonstrate a valid and equitable assignment, the court may consider any words or conduct demonstrating a party's intent to assign a right or action, whether there appears to be an intention of the other party to receive the benefit, and whether valuable consideration was given. *Langhals v. Holt Roofing Co.,* 47 Ohio App.3d 114, 116, 547 N.E.2d 401 (6th Dist.1988).

{¶34} The sale agreement between JAE Twin and Appellees that contains Reynolds' signature, obtained from Appellees' accountant, satisfies all of the contract

requirements, including the capacity of the parties, a meeting of the minds, and valuable consideration. In exchange for the purchase price of $65,000 Appellees purchased "business, property and assets" of the Gionino's pizzeria franchise in Carrollton, Ohio. This contract also required an assignment of the lease and, most notably, the sale agreement was valid only after the consent of Appellant: "Seller shall seek the approval of Gionino's Pizzeria, Inc. within five (5) days from the signing of this Agreement. This consent is a pre-requisite to this agreement having full force and effect." (Statement of Evidence, Exh. 5, )

{¶35} The trial court and Appellees place great emphasis on the fact that a franchise agreement was not attached to this sale agreement and that the sale agreement never specifically refers to a Gionino's franchise agreement within in the document. While both of these assertions are correct, it is clear from the terms of the sale agreement that Appellees were purchasing the business franchise for Gionino's pizzeria located in Carrollton, Ohio for valuable consideration and agreed to be bound by all requisite terms, including the consent and approval of Appellant. Although Reynolds maintains that he had only an oral contract for purchase of the business to operate a Gionino's, and the only franchise requirement was that he pay a 4% royalty fee, Appellees' conduct appears to demonstrate otherwise. We have already determined that the parties' conduct shows they evinced an intention to be bound by the written contract, even if no completely executed copy can be found. Included within that contract and the record as a whole are multiple instances where Appellees accepted the terms of the Gionino's franchise agreement, including acknowledging the need for Appellant's consent and the payment of the transfer fee; signing off on the assignment of the lease for the premises; noting in

Case No. 20 CA 0940

their business plan and commercial security agreement that they were "Livinthedream, Inc. dba Gionino's Pizzeria" and that they were seeking bank financing for the purchase of a Gionino's franchise. Appellees continued to operate the franchise for a period of ten years. Although the term "Gionino's franchise agreement" is missing from the sale agreement and a copy of the franchise agreement was not found attached, Appellees' conduct appears to lead to the conclusion that they intended to be transferred and assigned the rights of a Gionino's pizzeria franchisee. *Langhals,* at 116.

**{¶36}** The original franchise agreement between Appellant and JAE Twin, while not attached to the Exhibit 5 sale agreement, was admitted at trial as Exhibit 1. It is a twenty-six page document which contains multiple restrictive covenants, including a noncompete covenant; an exclusive supplier provision requiring Hillcrest Foods be the sole food supplier to the franchise and Coca-Cola the sole beverage distributor. (Statement of Evidence, Exh. 1.) The franchise agreement also sets out termination provisions, including the obligations of the franchisee to cease and desist from use of the Gionino's name in all advertising, to pay all outstanding fees, and to cease and desist from utilizing "all methods associated with the Seller or its name, marks, recipes, forms, manuals, slogans, signs [sic] symbols, devices or any part of the GIONINO'S PIZZERIA franchise." (Statement of Evidence, Exh. 1.)

**{¶37}** The issue here is whether there the parties intended to be bound to two separate contracts: the sale agreement between Appellees and JAE Twin and the Gionino's franchise agreement. The evidence of record reflects that, as a matter of law, a valid sale agreement between Appellees and JAE Twin existed. The terms of that sale agreement require adherence to and assignment of a Gionino's franchise, as that is the

only interest in the business of Gionino's that JAE Twin (as seller) was able to convey to Appellees (as buyer). Based on the specific facts in this record, including the conduct and admissions of the parties, this record shows a valid sale agreement was entered into by JAE Twin and Appellees for the assignment of a Gionino's franchise. Based on this record, the trial court erred in concluding that a contractual relationship did not exist. Appellant's first assignment of error has merit and is sustained.

{¶38} Appellant's second, third, fourth and fifth assignments relate to the terms of the franchise agreement and the availability of injunctive relief based on the assignment of the franchise. The trial court concluded incorrectly that there was no contractual relationship between the parties. However, in doing so, it also granted "preliminary" injunction on some of Appellant's claims, recognizing that Appellees owed some duties to Appellant stemming from their operation of a franchise while at the same time deciding that Appellees were not bound by a franchise agreement.

{¶39} Generally, injunctive relief is separated into three categories: (1) temporary restraining orders, which can be granted *ex parte* and are to last only long enough until a full hearing can be held; (2) preliminary injunctions, granted with notice and a hearing to maintain the parties status quo until trial on the merits; and (3) permanent injunctions, which are issued after a trial on the merits. *City of Bexley v. Duckworth,* 10th Dist. Franklin No. 99AP-414, 2000 WL 249121 (Mar.7, 2000), *5 citing *McCormac*, *Ohio Civil Rules Practice,* (2 Ed.1992) 403, Section 14.08. The United States Supreme Court has held that "the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct.1830, 68 L.Ed.2d 175 (1981).

Case No. 20 CA 0940

{¶40} Civ.R. 65(B) sets forth the procedure for hearings on preliminary injunctions:

(1) **Notice**. No preliminary injunction shall be issued without reasonable notice to the adverse party. The application for preliminary injunction may be included in the complaint or may be made by motion.

(2) **Consolidation of hearing with trial on merits**. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (B)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

{¶41} Because of the nature of a preliminary hearing, procedures may be less formal and evidence less complete than on a trial of the merits. *Camenisch* at 395. A party is also "not required to prove his case in full at a preliminary-injunction hearing." *Id.* Thus, "it is generally improper to dispose of a case on the merits following a hearing for a preliminary injunction without consolidating that hearing with a trial on the merits or otherwise giving notice to counsel that the merits would be considered." *George P. Ballas Buick-GMC, Inc. v. Taylor Buick, Inc.,* 5 Ohio App.3d 71, 74, 449 N.E.2d 403 (6th Dist.1982). Courts have held that it is improper to dispose of a case on the merits after a hearing on a preliminary injunction without formally consolidating that hearing with a trial

on the merits or otherwise providing notice to counsel that the matter was being heard on its merits. *Id.*

**{¶42}** Here, the trial court essentially decided all pending matters on the merits following the preliminary injunction hearing when it concluded there was no contractual relationship between the parties. A review of the judgment entry reveals the trial court did not conduct a thoughtful analysis on Appellant's preliminary injunction motion. In its entry, the trial court did not determine on each claim presented by Appellant whether Appellant had established by clear and convincing evidence that: (1) there was a substantial likelihood they would prevail on the merits; (2) that they would suffer irreparable injury if the injunction was not granted; (3) that no third parties would be unjustifiably harmed if the injunction was granted; and (4) the public interest would be served by the injunction. *Chapin,* ¶ 16. Despite this, and without warning the parties that it intended to consolidate the request for preliminary relief into a final hearing on the request for permanent relief, the trial court did, in fact, dispose of the merits of the case in its determination that there was no contractual relationship between the parties. Appellant's complaint alleged breach of contract, misappropriation of trade secrets and unfair competition. Each of these claims, however, stemmed from the presumption that the parties operated under a contract, spelling out the rights and duties on which the demands for relief were based. If no contractual relationship between the parties existed, there are no rights and duties on which to base relief.

**{¶43}** Interestingly, the trial court did grant part of the injunctive relief requested by Appellant, despite finding that no sale agreement existed and no valid Gionino's franchise agreement was enforceable in this matter. However, if the terms and conditions

of the sale agreement and franchise agreement do not apply, there appears to be no basis on which to grant any injunctive relief. Clearly, the court determined that the Appellees were "operating" a Gionino's "Franchise." (1/28/20 J.E., p. 5.) In its judgment entry, the trial court also recognized that Appellees were given access to trade secrets of the Gionino's franchise business. The trial court, however, does not attribute this to the parties' intent to be bound by the terms of any agreement. The trial court also does not recognize Appellees' actions, through their admissions and the exhibits presented, show they intended to operate a business franchise and that such an enterprise is normally subject to a franchise agreement. While there appears to be a question as to whether the franchise agreement between Gionino's and Appellees is fully binding on Appellees and whether this document is actually referenced in the sale agreement when it discusses "a certain Sales Agreement," it is apparent that Appellant was selling, and Appellees did purchase, a business franchise. It also appears Appellees understood that they were bound to certain Gionino's franchise requirements, requirements found within this franchise agreement. Appellees acted on these requirements.

**{¶44}** Because the trial court improperly determined, following a preliminary hearing, that no contractual relationship existed, the trial court in effect foreclosed any avenue for Appellants to seek relief. While it does appear that the trial court intended to hold additional proceedings in this matter, it does not appear that the court left Appellant with any triable claims. The trial court's actions in determining the merits of this case following the preliminary injunction hearing without proper notice to the parties violated Civ.R. 65(B). Further, as the parties did enter into a valid contract for the sale of the business based on the record, the trial court's determinations based on the assumption

that no contract existed are erroneous even regarding a preliminary injunction request. Further, the record reveals a question as to whether Appellees' behaviors demonstrated an intent to be bound by the Gionino's franchise agreement, and this question was not fully addressed below due to the trial court's erroneous determination as to the underlying sale agreement. Thus, this matter must be remanded for the trial court to undertake another hearing on Appellant's request for injunctive relief.

{¶45} Based on the foregoing, Appellant's first assignment of error has merit and is sustained. Because a new hearing must be held, Appellant's second, third, fourth and fifth assignments of error are moot. The judgment of the trial court is reversed and this cause is remanded to the trial court for consideration of Appellant's request for injunctive relief and other damages relative to the parties' contractual relationship.

Donofrio, P.J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, Appellant's first assignment of error is sustained and its remaining assignments are moot.  It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is reversed.  We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

<u>**NOTICE TO COUNSEL**</u>

**This document constitutes a final judgment entry.**